HORATIO O. STONE, Appellant, *v.* LEVI L. ATWOOD *et al.*, Appellees.

APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

A court of equity will correct a mistake in an award, so as to make it what the arbitrators intended it should be. Unless the mistake is that of all the arbitrators, the award cannot be reformed.

An arbitrator may be examined as a witness to sustain, but not to impeach, his award.

IN May, 1859, Stone and Atwood having certain matters in dispute, submitted them to their respective attorneys, Sherman and Fuller, as arbitrators, for determination.

Atwood owned a large amount of furniture in the " Orient House," on which, or a part thereof, Stone held a chattel mortgage. There was another chattel mortgage on all the furniture, given to R. M. Hough, N. Chapin, and defendant Covert, to secure $1,000, advanced by them to Atwood, and also to secure them from liability on a bond they had signed for Atwood.

The arbitrators were to fix a valuation on the furniture, and were further to estimate and determine the amount that Stone owed Atwood, and that Atwood owed Stone, and strike a balance between them. Atwood had paid money to Stone on account, and had also claims against Stone for damages sustained by the foreclosure by Stone of his chattel mortgage, which Atwood alleged was maliciously done, but Atwood was not to be allowed exemplary damages, but only for the actual loss he had sustained in the injury to the furniture.

Stone was to have and take the furniture at the arbitrators' valuation, and if there was anything found to be due Stone on the accounts, it was to be applied toward the payment for

the furniture as far as it would go, and Stone was to give his notes for the balance.

There were also three debts due to A. R. & G. H. Miller, Charles Toby and Bowen Brothers, amounting to $350, which they claimed Stone owed them, but which Stone claimed Atwood owed them. It was therefore agreed between Stone and Atwood, that the arbitrators should set apart furniture to the amount of $350, which should be appropriated to the payment of the Millers, Bowens and Toby, and that Stone should take the remainder of the furniture at the valuation aforesaid.

The arbitrators differed in the commencement as to how they should proceed in obtaining the valuation, one contending that the value of similar furniture in May, 1859, should be taken as the basis, and ordinary wear and tear deducted therefrom, and the other insisting that it had been agreed, and was the only true basis, to take the actual cost of this particular furniture when purchased, and to deduct therefrom ordinary wear and tear for like furniture. It was conceded that this furniture had suffered more injury than ordinary by reason of being removed from the Orient House, by Stone, in the January before, and the difference between ordinary wear and tear and the injury actually sustained was to be allowed Atwood.

The arbitrators finally agreed to proceed in the valuation according to the views of each, and then see how near they came, and try to reconcile the difference then. One of them arrived at the valuation upon his mode of procedure, and announced it at $3,779.51. The other had been figuring on his basis and made about the same amount, and consequently accepted the $3,779.51, as the valuation, but without going over the other's figures or knowing anything about them. He had not called in witnesses at this time or put in the bills of purchase on his view of the way the valuation should be arrived at, and did not do so, inasmuch as the total announced by his colleague agreed with his own ideas as to the amount. It was then agreed that Atwood should receive $1,300 from Stone, over and above everything. The arbitrators then awarded as follows:

| | |
|---|---:|
| Valuation of furniture, - - - - | $3,779.51 |
| Deduct to pay Millers, Bowens and Toby, | 356.71 |
| | |
| To go to Stone, - - - - - | $3,422.80 |
| Balance due Stone from Atwood, - | 2,123.04 |
| | |
| To be paid Atwood by Stone, - - | $1.299.76 |

Which was to be settled by Stone giving his thirteen promissory notes, payable one year from date—twelve for $100 each, and one for $99.76.

Before the property could be delivered, the Covert, Hough and Chapin mortgage was to be satisfied. This mortgage was given to secure $1,000, advanced by Covert, Hough and Chapin to Atwood, and also to secure them against liability on a bond they had signed for Atwood. By the terms of the award they were released from liability on the bond, and it now remained to pay the $1,000. Ten of the Stone notes, amounting to $1,000, were accordingly made payable to Covert and delivered to him, and thereupon the Covert, Hough and Chapin mortgage was assigned by the mortgagees to Mr. Stone. Subsequently the arrangement was made that Covert should settle the Toby, Miller and Bowen debts and receive the balance of the $1,299.76, namely, $299.76. There were also a few articles of carpeting, etc., in the Orient House, amounting in value to $125, which were not included in the award, and which were conveyed to Covert by bill of sale, (Stone having got title to them under the Covert mortgage.) This gave to Covert :

| | |
|---|---:|
| Notes in the first instance, - - - | $1,000.00 |
| Subtract debts of Miller, etc., - - | 350.00 |
| | |
| | $650.00 |
| Add balance of notes, - - - - | 299.76 |
| | |
| | $949.76 |
| Add articles of carpeting, etc., - - | 125.00 |
| | |
| | $1,074.76 |

There was $1,000 secured by the Covert mortgage, but the $74.76 was to pay for interest and trouble.

Stone, therefore, retained the notes for $299.76 until the Miller, Toby and Bowen accounts were settled. In pursuance of the arrangement, Covert settled Toby's bill, (which was for $100,) at once by giving him one of the Stone notes for that sum, and handed over the receipted account to Stone. This was on Saturday evening, (the day the award was carried into effect,) and Covert left town Sunday night, and did not return until Wednesday, when he was enjoined from disposing of the nine notes he then held, and no opportunity given him to settle with the Millers and the Bowens, which he would otherwise have done. Stone filed this bill against Atwood and Covert, alleging that the arbitrators made a mistake of $1,000 in the valuation of the furniture, and claiming that it should be deducted from the $1,299.76, and enjoining Covert, on the ground that the notes he held were so held "for the use of Atwood."

The defendant, Atwood, in his sworn answer, denies the mistake, declares if there was one it was not mutual, and that if the award were corrected it would not then conform to the intention of the arbitrators. Atwood further declares, that if such mistake occurred on Sherman's part, in the valuation of the furniture, that Fuller proceeded on a different basis, and did not participate in such error, and that the valuation would never have been fixed $1,000 lower than it was; that the valuation also affected the judgment of the arbitrators in striking the balance of accounts between the parties, which would not have been the same if there had been a mistake as alleged, and such mistake had been discovered; that the schedules were annexed to the award, for the purpose of giving a list of the furniture, so that Stone could take possession, and not to make the figures on them part of the award, etc., etc.

Covert, in his sworn answer, denies any knowledge of the alleged error in the award; does not believe there was any, etc.; declares himself to be the *bona fide* holder of the notes in question, for good and valuable consideration; denies that he holds them for Atwood's use, and says they were assigned and made payable to him, to pay the indebtedness of Atwood to him and Chapin of $1,000, and that the Covert, Hough and

Chapin mortgage was assigned to *Stone in consideration thereof*, etc., etc.

The bill was dismissed in the court below, and Stone prayed this appeal.

T. HOYNE, and W. B. SCATES, for Appellant.

I.   The bill to rectify the mistake which occurred in this case, was the proper remedy, and the *mistake* should have been corrected by the court below.   For, if there be a palpable mistake or miscalculation, the party aggrieved may bring his bill against the party in whose favor the award or mistake occurs.   *Williams* v. *Warren*, 21 Ill. 541 ; *Boston Water Co.* v. *Gray*, 6 Metc. 131, 168, 181, 182 ; *Bouck* v. *Wilbur*, 4 Johns. Ch. 405 ; *Champion* v. *Warham*, 1 Ambler, 245 ; 3 Atkyns, 644 ; *Roque* v. *Dalliman*, 6 Taunt. 112 ; 13 Ill. 456 ; 6 East, 309 ; 2 Mann. & Granger, (40 Eng. Com. Law,) 846 ; Story's Eq. Jur., sec. 1456.

"If there is a material mistake of fact apparent on the face of the award, or if the arbitrators themselves are satisfied of *the mistake* and state it, although *it is not apparent*, and if in their own view it is material to the award, although made out by extrinsic evidence, courts of equity will grant relief." *Knox* v. *Simonds*, 1 Vesey, Jr. 365 ; 3 Brok. Ch. Rep. 163 ; *Kline* v. *Catara*, 2 Gall. 71 ; 3 Atkyns, 644 ; 1 ibid, 64.

The error in this case is not one of *judgment* of the arbitrator who was deceived by this mistake.   The error of the finding is clearly shown in the award and schedules accompanying it; so that the true result can be deduced therefrom by a mathematical calculation, and a court of equity can most appropriately interfere against any mistake founded upon an erroneous calculation, and substitute the true for the false result.   3 Atkyns, (Anon. case,) 644 ; *Kent* v. *Elstob*, 3 East, 18 ; *Bouck* v. *Wilbur*, 4 Johns. Ch. 405 ; *Pleasants* v. *Ross*, 1 Wash. 156.

FULLER & HAM, for Appellees.

I.   The complainant, in order to maintain his bill, must show :

1st. That a mistake has occurred.

2nd. That this mistake is *mutual*, that is, participated in by both arbitrators. *Lyman* v. *U. Ins. Co.*, 17 Johns. R. 376; S. C., 2 Johns. Ch. 630.

There is no difference between an award and any other agreement in this respect. If the complainant had filed his bill to *set aside* the award, that would involve a different question ; but this is a bill to *correct* an alleged error, and that error must appear to have been mutual.

3rd. That the proposed amendment will make the award, if corrected, conform to the intention of the arbitrators. *Williams* v. *Warren*, 21 Ill. 552; *Lyman* v. *U. Ins. Co.*, 2 Johns. Ch. 632.

II. But it is assigned for error, that the court admitted parol evidence to vary, contradict and explain a written award.

The bill prays *inter alia*, "that the mistake in said award hereinbefore specified, may be corrected ; and the said award in that *respect reformed, and when so corrected carried into effect.*" It partakes, therefore, of the nature of a bill for specific performance, and the authorities on that branch of equity jurisprudence will be found more or less applicable to the case.

It is a familiar principle, that parol evidence is admissible in defense of a bill for specific performance, upon the ground of *fraud, accident, surprise* or *mistake*, not only as collateral to and independent of a *written* contract, but *in contradiction to it*. *Ramsbottom* v. *Gordon*, 1 Vesey & B. 165; *Winch* v. *Winchester*, 1 V. & B. 365.

The defendant, in answer to a bill for specific performance, may prove by parol evidence that the written instrument sought to be enforced against him, *does not correctly and truly express the agreement* of the parties, but that through fraud, surprise or mistake, there is some material *omission, insertion* or *variation* contrary to the intention or understanding of the parties. *Best* v. *Stow*, 2 Sandford's Ch. 298, and cases cited ; 2 Story's Eq., §§ 769, 770 and note ; *Clark* v. *Grant*, 14 Ves. 519, 524; *Winch* v. *Winchester*, 1 V. & B. 375 ; *Cathcart* v. *Robinson*, 5 Peters, 262.

It being once admitted that parol evidence may be received for the purposes indicated, there is no room for contending that it should be available in favor of *one party* or *for one purpose rather than another*. *Gillespie* v. *Moon*, 2 Johns. Ch. 585.

In cases of the character indicated, it is conceded that parol proof may be introduced to aid a complainant in his bill as well as to aid a defendant in his defense (*Gillespie* v. *Moon*,) and it would seem to follow in the case at bar :

1.  If the complainant relied upon the mistake as made out by the parol proof he has introduced, the defendant may rebut the equity of the bill by showing, also by parol :

That there was no mistake; that if there was, it was not mutual ; that the award, if corrected, would not conform to the intention of the arbitrators, and that such correction would operate as a fraud and surprise upon the defendant.

2.  If the complainant relies upon the allegation made *in argument*, but which we think is not made in the bill, that the mistake appears on the face of the award, then, assuming for argument's sake only, the fact to be so, still the defendant may show by parol :

That the figures, which are declared to show the error, are no part of the award, and that error does not therefore appear on the face thereof.

That the award, if corrected, would not contain the joint judgment of the arbitrators.

It is said over and over again in the books, that an award can not be corrected, unless the proof be *clear and explicit*, that it will thereby be made *to conform* to the intention *of the arbitrators*. *Williams* v. *Warren*, 21 Ill. 531.

Or, as Chancellor Kent says, (*Lyman* v. *U. Ins. Co.*, 2 John. Ch.) in regard to an agreement, "no amendment was ever made without absolute *conviction* of *the truth and precision* of the real agreement."

And the rule is laid down that cases arising upon awards are not to be decided upon any *technical rules of legal construction*. Russell on Power and Duty of Arbitrators, 32 Law Lib. 245.

The alleged mistake was not an extra judicial one.

The action of the arbitrators on the valuation was not at all like determining the number of acres of land, or the number or description of personal chattels, as, if the award had found six sofas in the house when there were but three, or five rocking chairs when there were six, or had called a table a chair, or *vice versa*, or things of a like nature, where if an error was committed it might be corrected by the *thing itself*.

*Bouck* v. *Wilbur*, 4 Johns. Ch. 406, was a bill for the correction of a mistake of an extra judicial nature, clearly proven and not denied by the arbitrators so far as appears. It is an entirely different case from the one at bar. The judgment of the arbitrators there was truly exercised and passed upon the object of submission. Here one of the arbitrators truly exercised his judgment, and so did the other one, but he, it now appears, made up his judgment on a mistaken calculation. There the mistake was by all the arbitrators in describing the boundaries of the fifty-acre piece of land, respecting the disposition of which there was no doubt. There the correction could be made by the land, *the thing itself*. Here there is nothing definite to go by.

It is not denied, however, that awards may in rare instances be rectified, but never without "absolute conviction," or, as Judge Walker says, in *Williams* v. *Warren*, "clear and explicit evidence" that the award thereby be made to conform to the intention of the arbitrators.

If the present award is not the joint judgment of the arbitrators, neither would the award as amended be such joint judgment.

Equity cannot correct one error by the commission of another.

The position of the complainant would oust the court of jurisdiction.

III.  "He who seeks equity must do equity," is a general rule, and in no class of cases will the court more rigorously enforce this maxim than in those of the present character.

Had the complainant brought his bill to *set aside* the award, and offered to restore the defendant Atwood to the position

he occupied *before* the award was made or the arbitration agreed upon or entered into, then his position before the court would have been very different.

Had he amended this bill even upon the coming in of the answer or of the proof, and sought the vacation of the award upon restoring Atwood to his original status, then he would have occupied a different position.

Equity demanded the restoration of the *status quo* before it could give relief.

IV.   The award in this case was fully executed.   It is true that certain notes were to be delivered, but they were to be to Covert, under an agreement made subsequently to the award, and distinct therefrom.

No award was ever corrected after full execution thereof.

The remainder of the brief of counsel for appellees, was devoted to the presentation of the defense of Covert as a *bona fide* holder of the notes in question, and is omitted here, as the decision of the case turned upon the other points involved.

BREESE, J.   The bill was filed in this case, by the appellant, to correct a mistake in the award after the same had been in most particulars executed by the parties.   The record shows a submission in writing, under bonds, by the appellant and Atwood, of certain matters in difference between them, growing out of the lease of the " Orient House" in Chicago, owned by appellant, and occupied by Atwood, and money loaned by appellant to Atwood, and out of which had arisen divers suits at law.   By the terms of the submission the arbitrators were required to find first, the balance due from Atwood to appellant upon a statement of their respective accounts.   They were then required to set aside a portion of the furniture in the house, to be appropriated in payment of certain debts then due and payable by Atwood to Bowen Brothers, A. R. and G. H. Miller, and Charles Toby, amounting to about three hundred and fifty dollars, provided that the indebtedness found due to appellant from Atwood, should first be paid in full out of the furniture in the house.   The appropriation to Bowen and the others to be made out of the residue of such furniture, should there be any.

By the terms of the submission it was also agreed between Stone and Atwood, that the balance, after allowing all just claims found by the arbitrators to be due from Atwood to Stone, should be paid and satisfied in full by Atwood out of the furniture in the Orient House, in the following manner : The arbitrators were to fix and determine the valuation of the furniture ; whereupon Atwood was to deliver to Stone, and Stone was to receive at such valuation, so much of the furniture as should be necessary to pay in full the amount of such balance, so to be found in his favor, and the arbitrators were to set aside so much of the residue of the furniture at the valuation as aforesaid, as might be necessary to pay the debts due Bowen Brothers, A. R. and G. H. Miller, and Charles Toby, if there should be sufficient ; and as to the residue of the furniture, if any there should be, Stone was to take and receive the same at the valuation to be fixed and determined as aforesaid, and give his promissory notes therefor in manner in the submission specified.

The arbitrators were the counsel of the parties, and they made their award in writing, on the 20th day of May, 1859. It recites as follows : "There is due to the said Stone from said Atwood, for money loaned and interest on the same, the sum of (naming the items,) three thousand one hundred and ninety-three dollars and forty-seven cents. And there is due to Atwood from the said Stone, (naming the items,) ten hundred and seventy dollars and forty-three cents, and that the balance due said Stone, from said Atwood, is the sum of two thousand one hundred and twenty-three dollars and four cents." The award then finds the amounts due respectively to Bowen and the others, and proceeds : "And we set aside for payment of the debts due the said Bowen, etc., to be appropriated by the said Atwood in payment thereof, the following articles of property, to wit :" (naming them and their value.) The value of this furniture thus set apart, foots up four hundred and forty-one dollars and fourteen cents. The award then proceeds : "And further, we do estimate and value the balance of furniture not appropriated in payment of debts as before mentioned, to be of the value of three thousand four hundred and twenty-

two dollars and eighty cents, according to accompanying schedules made by C. Morgan, A. R. Miller, Hollister, C. Toby, A. G. Burley, and the undersigned, and we do award and adjudge, that the said Stone shall take the said furniture, according to the said schedules at the valuation as aforesaid, and that the said Stone shall be credited with the sum of two thousand one hundred and twenty-three dollars and four cents, being the amount found to be due the said Stone, from the said Atwood, and upon the delivery thereof to said Stone, he, the said Stone, shall execute and deliver to said Atwood his promissory notes for the sum of twelve hundred and ninety-nine dollars and seventy-six cents, payable twelve months from date of this award, to wit, the 20th day of May." The various schedules referred to, after making the deductions allowed by the appraisers for wear and tear and injury to the furniture, amount to the sum of two thousand seven hundred and eighty-seven dollars and twenty cents, from which is to be deducted the value of the furniture set apart to pay Bowen and the others, amounting to four hundred and forty-one dollars and fourteen cents, leaving to go to appellant, two thousand three hundred and forty-five dollars and six cents. Atwood's debt to appellant amounted to two thousand one hundred and twenty-three dollars and four cents, which deducted from the value of the residue of the furniture, left to be paid by appellant to Atwood, the sum of two hundred and twenty-two dollars and two cents only. The arbitrators award to Atwood the sum of twelve hundred and ninety-nine dollars and seventy-six cents, as the amount to be paid by appellant to Atwood, after making the above deductions. The error arises, in setting down the value of the furniture in schedules Nos. 4 and 5. That value is stated at twelve hundred and twenty dollars and three cents, subject to a deduction of twenty per cent. for wear and tear, which would reduce the amount to nine hundred and seventy-six dollars and three cents. Instead of this sum, by mistake (as is alleged by appellant not in his bill, but in the argument of his counsel,) the sum of one thousand nine hundred and seventy-six dollars and three cents, was set down as the value, being seven hun-

dred and fifty-six dollars more than the original value of the articles, and one thousand dollars in excess, after making the deduction of twenty per cent. It is nowhere alleged in the bill, that this mistake appears on the face of the award, and evidence was offered by the appellant to substantiate it. There being no allegation in the bill of the patent character of the alleged mistake, and evidence having been offered by the appellant to show it, justice and equity would require that the same privilege should be awarded the defendant to controvert the mistake by evidence on his part. It is probable one of the arbitrators is cognizant of the mistake to the extent of one thousand dollars against his client, the appellant here, whilst it is equally apparent from the evidence, the other arbitrator is wholly ignorant thereof, and that the award as published, is a correct and true award, and is *his* award, irrespective of the mode and manner by which results were reached. We hold the principle to be well established, that a court of equity will correct a mistake in an award on one ground only, that the mistake was mutual—that all the arbitrators acquiesce in it—that with the alleged mistake it is not their award—that corrected, it is their award. An award is nothing more than an agreement made for parties which they could not make themselves, and it must be mutual, a concurrence in results—a meeting of the minds of both in the conclusions at which they arrived. The evidence is clear, that the alleged mistake of one thousand dollars was not participated in by both arbitrators. One of them distinctly states, if the award is reformed as proposed, it ceases to be his award. On data satisfactory to him, he found the several amounts allowed, and their appropriation. Can a court of equity then, when the mistake is not mutual—not participated in by all the arbitrators, reform the award? We think not. Had the scope and prayer of the bill been, to set aside the award, on account of the alleged mistake, leaving the parties to their original rights, a decree might have passed for such purpose, but the prayer of the bill is, to reform the award, to correct an error which does not appear to have been mutual, and which if corrected, will not conform to the intention of both the arbitrators, but to that of one only.

4

It would then cease to be an agreement of the parties made through the arbitrators. We have not been able to find a case, where an alleged mistake in an award has been corrected, except where all the arbitrators concur in admitting the mistake. On principle it could not be otherwise, for as an award is but an agreement of the parties, it must conform to the intention of the parties, and a court of chancery in a proper case, will so decree.

The appellant, to show the mistake, which he does not allege in his bill appears on the face of the award, offered testimony to show it, and having done so, contends that the Appellee, Atwood, shall not be allowed to controvert it by other testimony. He contends that he is estopped from making proof that if the award is reformed, it would not be the award of the arbitrators. If the bill set out the award, with the accompanying schedules, and alleged that the mistake appears on its face, and no proof is offered by the complainant, other than the exhibits themselves, it might be the defendant would not be permitted to allege against it. But this is not such a case. The appellant attempts to make out his case by testimony, which the defendants can rebut, and show there was no mistake, or if one, and if corrected, the award would not be the award of both arbitrators. If not so, then one party would have a great advantage over the other. Apparently there is a mistake against appellant, of one thousand dollars, which, if rectified, the other party shows would be to his disadvantage; and, therefore, the award would not be the award of either of the parties, and so not the agreement of the parties.

A court of equity can only make agreements, upon the allegation of a mistake, conform to the intention of the parties. By correcting the error as prayed for in this case, the court would not do so. The doctrine of estoppels does not apply because parties are not bound by an award, if it is not the result of the joint judgment of the parties. If one party attacks it by testimony, the other party can defend by the same weapons.

On the point that an arbitrator is not a competent witness,

that depends upon circumstances.    Like a juror, he cannot be called to impeach his award, but like him he can be called to sustain it.    That was the purpose and office of the testimony of the arbitrator called by Atwood.    The complainant's case was dependent on the testimony of one arbitrator chosen by himself; equal justice would demand the defendant's case should be protected by the testimony of the other, if possible. We are satisfied if the award is reformed as proposed, it would not be the award of the arbitrators.    This was the view taken by the Superior Court, and we think the correct view. The decree must be affirmed.

*Decree affirmed.*