St. Louis, Alton and Terre Haute Railroad Co.

*v.*

William W. Thomas.

1. Practice—*pro forma order overruling motion for new trial.* The practice of overruling a motion for a new trial *pro forma* is new, and should not be encouraged. In the future this court will refuse to act on such orders.

2. Master and servant—*liability of clerk for money loaned by him.* A cashier or clerk of a railway company who has charge of its moneys, is under a legal liability to the company to take care of and preserve its funds so intrusted to him, and if he loans the company's money to a

fellow servant without the order or direction of any one having the right to give such order, he will be liable personally to the company for the same, and if he pays the same he can not recover it back.

3. Duress—*opinion of criminal liability.* Where a party is induced to pay money to his employer to make up a deficiency in moneys intrusted to him as clerk, and his brothers, after examining the books, advise him that he is liable to a criminal prosecution, and another servant or employee of the same master gives him the same opinion, and advises a settlement, but makes no threat of a prosecution, it can not be said that the money is paid under duress.

4. Evidence—*party's own letters.* In a suit by an employee of a railway company, to recover back money paid by him to the company, letters written by the plaintiff to the officers of the company are not admissible as evidence in his favor.

Appeal from the Circuit Court of St. Clair county; the Hon. William H. Snyder, Judge, presiding.

Mr. James M. Dills, and Mr. C. F. Nœtling, for the appellant.

Mr. James M. Hay, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

This was an action of assumpsit, brought to recover back from the railway company moneys paid by the father and brothers of appellee to the company, on a claim by the company that appellee, whilst in its employment, had appropriated their money to his own use.

In January, 1869, appellee, who was then under age, was employed by the company as a clerk in their general office in St. Louis, Mo., and so acted until in June, 1871. He was then promoted to the position of secretary, auditor and cashier of the company, at a salary of $150 per month. It seems that whilst in this position he received, deposited and drew out all money received by the company in the course of its business, and any sum that remained at the end of each month, after paying the expenses of the company and the salaries of its officers, he sent to the company's bank, in New York City. He continued to hold these positions until the 6th of April, 1872, when he left.

30—85th Ill.

In the previous March his books showed some $3986.33 more than the amount of cash on hand. In other words, his cash was that amount short of what it should have been. On the 30th of March, his father and brothers paid to the company $3060.20, and on the 6th of April the further sum of $926.13, to make good this deficit. He then left the employment of the company for a time, but returned again and acted simply as a clerk, for some months, and then left, and has not since been employed by the company.

To recover this money from the company he brought this suit, and on a trial before the court and a jury he recovered a verdict for $4919.11. The court below overruled a motion for a new trial, *pro forma*, and rendered judgment on the verdict. The company appeals.

The practice is new and should not be encouraged, of a *pro forma* order overruling a motion for a new trial. It is an innovation that, if permitted, will lead to delay and expense, and can produce no beneficial results to any party. It is but referring the question of whether a new trial shall be granted to this court. We feel that we shall not hesitate, in the future, to decline to act on such orders.

Passing over the question, whether appellee has any power, under any circumstances, to sue for and recover money paid voluntarily and without request, by his father and brothers, to prevent exposure and family disgrace, as this was evidently done, we will proceed to examine the case and determine whether the evidence shows any grounds of recovery.

Appellee claims that he let Broughton, another employee of the company, have the money, with the expectation that he would pay it back when it should be required; that when he thus let Broughton have money, he made a memorandum of the amount and put it in the drawer and counted it as money; that a few days before he was required to settle and pay the amount the cash was short, Broughton asked for and he gave to him the memorandum, to enable Broughton to ascertain the amount he had thus drawn; that he refused to return the memorandum, and then said to appellee that the cash was

short and he could be sent to the penitentiary. The settlement, he says, then followed.

He, his two brothers and Broughton were all present at the settlement, examining the books, he aiding in ascertaining the amount of deficit, and, strange and incredible as it may seem, he did not claim that Broughton had received a dollar of the money. The great and indispensable necessity, to render this a defense, is, to show that he, as cashier, was bound to permit Broughton to have the money. This he has failed to do. Parker, the vice president of the road, testifies, that under the regulations of the company he had no such authority, and was not required to obey orders, disposing of the money of the company, given by Broughton. Nor has appellee proved, or introduced the slightest evidence tending to show, that he was authorized, by the regulations of the company, to permit Broughton, or any other employee, to have a dollar, unless the company owed it to him.

If he perverted or misapplied the money he was legally liable to account for it. Nor does it change the rule, that he loaned it, or participated with others in depriving the company of it. Conceding all he claims, that he delivered it to Broughton, and Broughton used it and is guilty of theft, still that does not exonerate appellee. It was his duty to keep and safely preserve the money, as shown by the regulations of the company, and only pay it to those legally entitled to receive it. He failed to do so and was liable to be sued and the amount recovered from him; and being thus liable, he only discharged a legal liability when the money was paid to the company. The evidence does not disclose the slightest grounds to recover the money back.

If what he claims is true, then his claim is upon Broughton, to whom he says he advanced the money, and not against the company, that has only rightfully obtained their money from him.

It is urged, that the money was paid under duress. The evidence is wholly wanting to establish even the slightest semblance of such a defense. Appellee does not even say that

Broughton threatened a criminal prosecution, and hence he seems to have acted freely and without the slightest coercion. His brothers, after examination of the books, seem to have fully concurred in the belief that he could be convicted criminally, and they are both practicing attorneys. Again, he advised with an attorney in St. Louis, and he, on appellee's own statement of his case, advised him that he could be convicted. Then, how did Broughton place him under duress simply by giving him the same opinion he received from his counsel, and that was entertained by his brothers?

It is insisted, that the court erred in permitting appellee to read copies of letters written by himself to the president and vice president of the company. We fail to see how they could be evidence in the case. They were simply his statements, not under oath, and not subject to cross-examination, and were in nowise pertinent to the issue. They were well calculated to mislead and prejudice the jury, and should have been excluded. We do not see what pertinence the evidence in reference to the Illinois Central railroad claim had to the issue being tried.

Even if Broughton was illegally, if not criminally, appropriating their money to his own use, we fail to see how that tends to prove that appellee is entitled to recover back from appellant money he had paid them under legal liability. It was foreign to the issue and should have been excluded.

The judgment of the court below is reversed.

*Judgment reversed.*