JOHN F. BODINE

*v.*

JONATHAN H. MORGAN et ux. et al.

A father and son, while in complainant's employ, appropriated to their own use a large number of store orders and goods. Upon detection, and under what the defendants claim was duress, the father gave complainant a mortgage on his lands for the amount so abstracted.—*Held*, that there was no proof of coercion; that threats of a lawful arrest do not constitute duress, and that the fact of the father continuing to work for complainants, at intervals, for nearly five years after the mortgage had been given, and that he made no objection to its validity until after the foreclosure had been instituted, were significant indications that the giving of the mortgage was voluntary.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. J. S. Jessup* and *Mr. S. H. Grey*, for complainant.

*Mr. P. S. Scovel*, for defendant Jonathan H. Morgan.

THE CHANCELLOR.

This suit is brought to foreclose a mortgage for $5,000 and interest, on land in Camden county. The mortgage was given in September, 1869, by Jonathan H. Morgan and his wife to the complainant, who took it in trust for his business firm of Bodine, Thomas & Co., of Williamstown, in that county, as security for the payment of $5,000, which they claimed was due to them from Morgan and his son, Amos F., then known as Frank Morgan, for the alleged fraudulent taking and appropriating to their own use of business orders of the firm, payable in goods, and goods of the firm. The firm, which then consisted of the complainant, Isaac Sharpless, Charles E. Thomas and Walter R. Thomas, were and had been the proprietors of a glass factory, a country store and a flouring mill, and they paid their workmen in the factory in part with orders for goods, redeemable at their store; and un-

Bodine v. Morgan.

issued orders to a large amount were kept in the store for issue. Morgan was clerk for the firm and in charge of the store from 1866 to the time when the mortgage was given. His son Frank was also in the employ of the firm in the store as an assistant to his father for about ten months, up to about the month of March, 1869. The unissued orders were in their charge, and they both had access to them. In August of the last-mentioned year Frank was convicted in the court of special quarter sessions of Camden county of grand larceny for taking and appropriating to his own use some of these orders. He admitted having taken them to the amount of $450, but the firm insisted that the amount was about $600 ($592), for which last-mentioned sum his father then gave his note to them, which was charged to him on their books. They owed him at that time about $800. Subsequently, and about the beginning of September following, the firm became satisfied that their loss by such fraudulent misuse of their orders on the part of the son was $1,500 more, and that there was due to them from the father $3,500, at least, for like fraudulent use of the orders on his own account, and for their goods fraudulently applied by him to his own use. The matter was taken in hand by two of the members of the firm, Messrs. Bodine and Walter R. Thomas. The greater part of the investigation was made by the latter. They had an interview with the father, which resulted in his agreeing to give a mortgage to secure to the firm $5,000 for those fraudulent appropriations, payable in three years, with interest. The mortgage in suit was thereupon given. It was dated the 1st of September, 1869, was acknowledged on the 22d of that month, and recorded on the 25th. Nothing has ever been paid upon it. The defendant Jonathan H. Morgan has answered. His wife has not. By his answer he alleges that the bond and mortgage were obtained from him without any consideration whatever, and by fraud; the fraud alleged being threats on the part of the complainant and his copartner, Walter R. Thomas, tc arrest Morgan and his son Frank, and proceed against them by

NOTE.—See Smillie v. Titus, 5 Stew. Eq. 51, note; St. Louis R. R. v. Thomas, 85 Ill. 464; Abbott v. Fisher, 124 Mass. 414.—REP.

Bodine v. Morgan.

criminal proceedings for the alleged misappropriations, unless the former would secure to the firm the payment of $5,000.

It would, perhaps, be quite enough to say that the weight of the evidence is against Morgan. He, indeed, swears that Messrs. Bodine and Thomas said that if he did not make satisfaction for their claim by security they would proceed against him according to law and arrest him, and (in answer to a leading question by his own counsel) he further says that it was through fear of the threats they had made against him, of having him arrested, that he consented to give the bond and mortgage; but both Mr. Bodine and Mr. Thomas expressly and explicitly swear that no threats whatever were made. Morgan also says that the commissioner (now dead) who took his acknowledgment to the mortgage, said when he took the acknowledgment, in reply to his remark that it was all wrong but that he did not know that he could help himself or do any better, that Mr. Bodine said that if he did not sign the mortgage he would put the law in force and have him arrested; but Mr. Bodine, on the other hand, swears he was present when Morgan's acknowledgment was taken and that he neither made nor heard the commissioner make any threat to induce Morgan to sign; and he also says that he never authorized the commissioner to use any threats or do any act to compel the execution of the paper, and further, that on the contrary he told him to be extremely careful and not use any word or do anything that could be construed into coercion. Mr. Bodine also says that after Morgan signed the mortgage the latter told the commissioner to wait there (at their store) until he should have gone down and talked with his wife; that Morgan then went home, and the commissioner and Mr. Bodine waited until he returned, and when he returned he told the commissioner that his wife was too much excited to sign at that time, and he would let him know when she could sign. But further, the threat to arrest him for his unlawful appropriation of their orders and goods to his own use unless he should indemnify them, constituted, if it was made, no duress, and if the mortgage had been given under the pressure of such a threat it would not have affected its validity.

But Morgan says there never was any consideration for the mortgage, and that there is not and never was anything due upon it. The proof, however, is to the contrary. He says that in the interview between him and Bodine and Thomas (there was no one else present), he at all times denied that he had taken any of the orders or goods of the firm for his own use. On the other hand, both Bodine and Thomas swear that he confessed that he had done so. Mr. Bodine says that Morgan acknowledged on that occasion that he had used the firm's goods and orders without charging himself with them, and that he had used them with Jesse Stiles, and in building the house on the farm (the mortgaged premises) and in other improvements on and about that property. Mr. Thomas says that he cannot recall the language used, but it left the impression on his mind of a substantial admission of the truth of the charge or charges. Nor does there appear to have been any haste either in coming to a conclusion as to the amount of the loss of the firm by the imputed fraud, or in obtaining the security now in dispute. The interview, before referred to, occupied from two to three hours. Both Bodine and Thomas, particularly the latter, had previously made an investigation into the matter, and each made a calculation there. They differed—Thomas's estimate being higher than Bodine's. The items were mentioned and discussed. At the very considerable distance of time (about thirteen years) which intervened between that time and the time when he was examined as a witness in this cause, Mr. Bodine is able to give the items in a general way. He says he thinks they counted something like $1,500 for Frank, and the balance, $3,500, for his father; that the way they arrived at that balance was this: they knew what the house (on the farm) cost —from $900 to $1,000, he cannot say which of these sums, positively; that they reckoned $600 for Jesse Stiles's work, and $400 for Jacob Davis's work; that other work in small amounts, which they could specify at that time, ran up to between $1,700 and $1,800, and that these sums, altogether, exceeded $5,000, but they threw off the excess above $5,000. He adds that they found there had been no charge on the books that indicated that Morgan had paid Jesse Stiles, and Morgan then acknowledged

the correctness of that charge. In a former part of his examination he says the charge in gross was a fraction over $5,000 ; that they specified so much for the house, so much for Jesse Stiles, so much for Jacob Davis, and so much for the other improvements on the farm, and he believes there were $1,500 for orders that Frank had taken and sold to one Webb over and above the $592, and that when he showed this to Morgan, the latter said :

"Well, that is a good deal more than I thought it would be. I think you have got it a little high, but still I cannot recollect the particulars of it."

He further says there was a settlement arrived at, at that time in that room, between the firm and Morgan, and that the latter said, "You know I have no money to pay with," and he, the witness, said he, Morgan, could give a mortgage for the amount and they would make it even $5,000, to which Morgan agreed, and furnished to Mr. Bodine, who drew the bond and mortgage, his deeds, in order that he might be enabled to describe the property in the mortgage. Mr. Bodine also says that at the time when the arrangement was made for Morgan to give the mortgage, the whole matter was explained to him—where they alleged those moneys had gone, and the amount of each item given to him as Mr. Bodine had stated it in his memorandum, and that it was after this explanation and statement that Morgan agreed to give the mortgage, and that the agreement was entirely voluntary. Mr. Thomas says that their investigation resulted in an interview with Morgan ; that the items were, in that interview, definitely stated on paper ; that they made the investigation to find out, as nearly as they could, the amount of the alleged peculations ; that the investigation had been pursued somewhat independently by Mr. Bodine and himself, and the exhibit showed a substantial agreement of those items that they had both gone over, which amounted in the gross to $5,000 ; that the amounts were called off, but he is not certain that the memoranda were shown to Morgan, but he says the items were severally named, and also the sum total; that, as before stated, he understood Morgan substantially to admit the truth of the charges then made, and he says that an understanding was come to and an

Bodine v. Morgan.

agreement made that he should make a mortgage to cover the amount. Soon after the mortgage was given, Mr. Bodine paid to his copartners, by allowing the amounts on his demands against them, the value of their respective interests therein; to Sharpless $1,215.29; to each of the Thomases $1,258.19, and to William H. Bodine $173.60. The last named was not a member of the firm when the mortgage was given, but had been previously. The complainant's interest was $1,094.73. In July, 1873, the complainant entered up a judgment pursuant to the warrant of attorney in the bond, against Morgan, for the money then due on the bond. Morgan continued in the employ of the firm after the mortgage was given for a month or six weeks, he says. He also says they did not discharge him, but he left them because he did not want to stay there after they had accused him of stealing. He admits that afterwards he did work for them, such as mason work and repairing, and their books show that he continued to deal with them up to May, 1874, nearly five years after the mortgage was given. And here it will not be out of place to remark that he swears that they still owe him $200, the balance which remained to his credit after charging him with the before-mentioned note. But the proof is that that balance was afterwards paid to him in their mutual dealings, and that in July, 1872, there was a balance against him, and in April, 1873, another of $97.78, for which the firm, which then consisted of John F. Bodine, Charles E. Thomas, and Arthur F. Wrotnoski, obtained judgment against him, and collected it with the exception of a small amount which they disregarded. I do not think it necessary to refer any further to the testimony. Much of it is entirely incompetent, being mere hearsay and proof of Morgan's reputation for honesty. The important consideration is that no fraud is established. The mortgage resulted from a voluntary agreement on the part of Morgan with the firm to secure them $5,000 for the losses which he admitted they had sustained by the fraud of himself and his son while in their employment. He took no steps to set it aside, and never even protested against it, though it had stood against his property for about four years, and consequently had been due for a year when this suit was brought. The complainant is entitled to a decree.