## CHARLES W. PARDRIDGE AND EDWIN PARDRIDGE
### v.
## PATRICK F. RYAN.

*Partnership—Accounts—Auditor—Evidence—Agreement of Counsel as to Questions Asked—Oath—Waiver—Report—Exceptions—Chap. 117 R. S.*

1. An order that an action of assumpsit be changed to that of account, has no effect while the pleadings remain in assumpsit. Complaint of such action primarily made herein comes too late.

2. A court has no power to direct the parties to a given suit how they shall proceed.

3. There is no law requiring a referee to be sworn.

4. The knowledge of an attorney that an auditor is a master in chancery, and the taking of testimony before him as such, he likewise knowing that the order of appointment as auditor had not reached him, amounts to a waiver of the fact that he was never sworn as such.

5. The appointment of a referee to try a common law controversy stands upon the same reason as the reference to a master of a similar controversy in chancery, and the proceedings, founded upon the same necessity, should be similar.

6. Upon an agreement of counsel in proceedings before a referee touching the taking of accounts, that objections to questions asked should be taken down, but should not be passed upon by him, and that they should

Pardridge v. Ryan.

be reserved in the testimony when it came before the court if either party wanted to raise the questions, an exception will not lie to the referee's report unless it affirmatively shows that a wrong result has been reached.

7. Whatever surplusage such report contains, not so connected in terms with the other matter that it may not be stricken out without changing the meaning of what is left, may be rejected. And so treating such report, the finding upon the main issue between the parties stands, like the verdict of a jury upon conflicting evidence, as a finality.

[Opinion filed January 22, 1890.]

APPEAL from the Superior Court of Cook County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Messrs. BRANDT & HOFFMAN, for appellants.

Messrs. DUNCAN & GILBERT, for appellee.

Where the cause is not strictly referable, a party who consents to a reference is concluded by the order of reference. Harris v. Bradshaw, 18 Johns. 26; Armstrong v. Percy, 5 Wend. 535.

In Smith v. Minion, 1 Coxe (N. J.), 16, which was an action of slander that by consent was referred, upon the report coming in the defendant contended that under the declaration there could be no recovery; after disposing of some collateral question the court say: "Again, putting all this out of the question, we are clearly of opinion that it is not competent for a party who submits to a reference, and agrees that judgment shall be entered and execution issue, to come forward at this stage and take exception to the declaration. The defendant's counsel were called upon to show a case where, after an award made upon a reference by consent, the court even looked into the declaration to see if the action was sustainable. The opinion of Lord Chancellor Hardwick, in the case of Medcalf v. Ives, 1 Atkyne, 63, seems decidedly the other way. No such precedent has been, or we believe can be found, and this court, under the circumstances of this case, feel no inclination to make one. The consent of parties that judgment shall be entered, is in the nature of a release of errors, and the plaintiff here is acting manifestly contrary

to his agreement of record; the court will not listen to such an allegation." See, also, Forseth v. Shaw, 10 Tyng (Mass.), 256.

There seems to be no adjudication in this State as to the effect of failure to take the oath by the auditors where the parties appear and proceed with the hearing without making objection or raising the question; but we have authority on so closely analogous questions as to be fairly considered directly in point.

Section 3, chapter 10, Rev. Stats. Ill., on " Arbitrations and Awards," is as follows:

" Before proceeding to hear any testimony in the cause the arbitrators shall be sworn faithfully to hear, examine and determine the cause according to the principles of equity and justice, and to make a true and just award according to the best of their understanding; which oath may be administered by any officer authorized to administer oaths."

By the wording of this latter clause the requirement of the oath is equally as imperative as in the case at bar, under the quoted Sec. 7 of Chap. 2.

The only instance in which the higher courts of this State have passed upon the point at issue, so far as we have been able to find, is the case of K. & S. R. R. Co. v. Alfred, 3 Ill. App. 511, where one of the points made against the award of the arbitrators was that they were not sworn. In that case the Appellate Court, at page 515, used the following language:

" There is a conflict of authority as to whether the statute award is valid if the arbitrators be not sworn, where the statute directs they shall be. In Louisiana and Kentucky it has been held that the award is void if they be not sworn." Overton v. Alpha, 13 La. Ann. 558; Fisher v. Mosley, 1 Littell, 247; Lile v. Barnett, 2 Bibb, 166.

" In New Jersey it has been decided both ways." Ford v. Potts, 1 Halst. 393; Inslee v. Flagg, 2 Dutcher, 368.

" In New York, Missouri and Wisconsin, and perhaps other States (Massachusetts should be included, and the United States Supreme Court as well), it is held, and, we think, with

Pardridge v. Ryan.

better reason, that the parties may waive the requirement of the statute, and that if they tacitly go on with the hearing before unsworn arbitrators they shall be deemed to have so waived the swearing." Howard v. Sexton, 1 Denio, 440; same case, 4 Const. 157; Browning v. Wheeler, 24 Wend. 258; Tucker v. Allen, 47 Mo. 488; Hill v. Taylor, 15 Wis. 190; see, also, Newcomb v. Wood, Sup. Ct., U. S. Central Law Journal, Vol. 8, p. 175.

"It would certainly be a fraud for one of the parties noticing the omission to keep silent, and if the award should be favorable to still remain silent, but if unfavorable to move to set it aside because of the undisclosed omission; and we are not disposed to consider the neglect a fatal one, even on a motion for judgment under the statute."

This case was reversed in the Appellate Court, and under a certificate of importance went to the Supreme Court, where it appeared as Alfred v. K. & S. W. R. R. Co., 92 Ill. 609; and in the Supreme Court no question whatever was raised upon the score that the arbitrators had not been sworn. See, also, R., R. I. & St. L. R. R. Co. v. McKinley, 64 Ill. 338; Edwards v. Edwards, 31 Ill. 474; Cornelius v. Boncher, 32 Breese.

In the case of Cochran v. Bartle, 8 Western Reporter, 707, decided by the Supreme Court of Missouri, in March, 1887, and in which the Missouri cases cited by appellant's counsel are expressly commented upon, the point made was that the award was void and had no binding force, because the arbitrators were not sworn. That, also, was a case like the case at bar, in which the statute of Missouri required the arbitrators to take an oath. There the court say:

"The defendant, in his answer, resists its enforcement, on the ground that neither the arbitrators nor witnesses were sworn; that the award is not specific enough to be enforced, and did not embrace all matters referred for arbitrament. On a trial had before the court, sitting as a jury, judgment was rendered for the plaintiff, from which the defendant has appealed, and assigns, among other grounds of error, the action of the court in giving and refusing instructions. The

court tried the case upon the theory, as shown by the instructions given, that, if the parties to the arbitration waived the swearing of the arbitrators and witnesses, the award could not be assailed on the ground that they were not sworn. If this theory is correct, and if there is evidence in the case tending to show such waiver, the court did not err in giving the instructions complained of.

That the theory adopted by the trial court was the correct one, is established by the case of Tucker v. Allen, 47 Mo. 491, where it is held that notwithstanding the statute requiring arbitrators to be sworn, the parties might waive the taking of the oath, and that the failure of the arbitrators to take the oath in case of such waiver, would not invalidate their award; and the doctrine of the New York courts was approvingly referred to, where it is held that such waiver might either be express or inferred from surrounding circumstances, as where the parties proceed to a hearing without objection." The same principle is announced in the following authorities: Howard v. Sexton, 1 Denio, 440; Newcomb v. Wood, 97 U. S. 581 (Bk. 24, L. Ed. 1885).

" In the case last cited it is said: ' The objection that the arbitrators were not sworn is waived by the plaintiff in error by appearing and going to trial without requiring an oath to be administered. If the witnesses had not been sworn the waiver of that defect under the same circumstances would have been equally conclusive.'

" Counsel have cited us the cases of Toler v. Hayden, 10 Mo. 400; Bridgeman v. Bridgeman, 23 Mo. 272; Walt v. Huse, 38 Mo. 210; Fassett v. Fassett, 41 Mo. 516; Frissell v. Fickes, 27 Mo. 557, as being opposed to the case of Tucker v. Allen, *supra*. This point, we think, is not well taken, as an examination of the cases shows the question of waiver was not before the court in any of them, nor in any manner referred to; and that they only decide that every submission to arbitration which is in writing, is to be regarded as a submission under the statute which requires that the arbitrators should be sworn.

It is also insisted that the court erred in refusing instruc-

Pardridge v. Ryan.

tions asked by defendant, to the effect that, although the court might believe that defendant waived the taking of the oath by the arbitrators, unless the court further believed that, at the time of such waiver, defendant did not know that the statute required the arbitrators to be sworn, in law there was no waiver.  It is a well recognized maxim that every one is presumed to know the law, and that ignorance of the law does not excuse.  While the defendant testified that he did not know that it was necessary for the arbitrators to be sworn, he does not testify that his action would have been otherwise than it was, had he known it, or that he would have required them to take the oath.  In the case of Grafton Company v. McCully, 7 Mo. App. 580, it is said that 'the administration of the oath to arbitrators may be waived; and that if this is done, it is immaterial that the parties did not know that the statute prescribed an oath.'

. In Manard v. Freder, 7 Cush. 250, the Supreme Court of Massachusetts say:  " Parties can not be permitted to lie by, making no objection to the forms and mode of proceeding before the arbitrators, taking their chances for a favorable result, and when they find the award to be adverse, avail themselves of such grounds to get rid of it.  In such cases silence is acquiescence, and amounts to a waiver of all objections to irregularities in the proceedings."

The objection that the arbitrators were not sworn was waived by the plaintiff in error by appearing and going to trial without requiring an oath to be administered.  If the witnesses had not been sworn the waiver of that defect under the circumstances would have been equally conclusive.  Edwards, Referees, p. 107;   Morse, Arbitration and Award, 172.   In Howard v. Sexton, 1 Denio, 440, Bronson, Ch. J., said :

" It is not denied that there was a statute submission (R. S., 541, Sec. 1), but the argument for the defendant is that because the arbitrators were not sworn (Sec. 4) the whole proceeding before them was *coram non judice;* or at least that it was not a statute arbitration, and consequently there was no authority to swear the witnesses, as there would have been, had the arbitrators been sworn.  Such is not my opinion.

True, the statute says the arbitrators shall be sworn; but that, like similar provisions in relation to judges and jurors, was only intended to secure to the parties, if either of them desired it, a hearing and decision by persons sworn to a faithful discharge of their duties. I can not suppose that the Legislature intended to prohibit the parties from waiving the oath to the arbitrators, *nor that going on by consent without the oath changes the legal character of the tribunal.*"

In Day v. Hammond, 57 N. Y. 479, the submission was on condition that six days notice of time and place of meeting should be given to hear and determine the claims in dispute.

The facts show that no notice was given of either time or place, and complaining party did not appear or consent.

The New York Rev. Stats. required the oath as ours does. The court say: " The first subject of inquiry is whether Slayter's failure to take the statutory oath invalidates the award so completely as to make it a nullity, or whether it is an irregularity which leaves the award in force until set aside by the court, or whether it is of no legal consequence.

"On this point there is a great conflict in the decisions of the respective States. In New Jersey, where an oath of office is required by law of arbitrators, an award made without taking the oath is a nullity. Combs v. Little, 3 Green Ch. 310; Inslee v. Flagg, 2 Dutch. 368. The same rule prevails in Kentucky (Lile v. Barnett, 2 Bibb. 166); so in Louisiana (Overton v. Alpha, 13 La. Ann. 558; Bethea v. Hood, 9 Id. 88), and in Missouri (Frissel v. Ficks, 27 Mo. 557; Toler v. Hayden, 18 Id. 399; Fassett v. Smith, 41 Id. 516). On the other hand it has been held in Vermont, in Wisconsin and in Pennsylvania, that the oath of the arbitrators may be waived, and that its absence is not a vital or jurisdictional question. Woodro v. O'Connor, 28 Vt. 776; Hill v. Taylor, 15 Wis. 190; Otis v. Northrup, 2 Miles, 350. This result has also been reached in the New York cases. Browning v. Wheeler, 24 Wend. 258; Windship v. Jewett, 1 Barb. Ch. 173; Howard v. Sexton, 1 Denio, 440; S. C., 4 N. Y. 157. The defendant insists that the question did not come up directly in the last case. The principle, however, is involved. The oath can not be waived

Pardridge v. Ryan.

if it is jurisdictional. In Islee v. Flagg, the case of Howard v. Sexton is commented upon, and the decision is made to rest upon the ground that the New York courts hold that the agreement of the parties gives the arbitrator jurisdiction, and that the absence of the oath is not vital. In following Howard v. Sexton, this court must hold that the failure of Slayter to take an oath as arbitrator was, at the most, an irregularity and could be waived. There was, however, in the present case, no waiver. The irregularity continued down to the issuing of the award.

" The true view is that the court, acting as a court of equity, should, where there is no waiver, set aside the award on proper application. The statute should be regarded as having some practical operation. While it is reasonable to hold, as in Howard v. Sexton, that the parties may, by mutual consent, waive the statutory provision, yet in a case like the present where there is no evidence whatever of waiver, the correct construction of the statute is that a party may insist upon the observance of its requirements; and the court may, in the exercise of a sound discretion, set aside the award for want of such observance."

It will be observed that in this last case there was no notice given of either the time or place of the hearing before the arbitrators, and the complaining party neither appeared nor consented to the proceeding and consequently there would be no waiver. But the reasoning of the court showed that if these elements of waiver existed, the award would not be impeached because of the failure of the arbitrator to take the prescribed oath.

In Browning v. Wheeler, 24 Wend. 257, the court say :

" This is not a jurisdictional fact. At least until the contrary appear it must be intended they were sworn, or that the parties waived the ceremony by not objecting, or by positive consent. Jurisdiction means legal power to make the judicial decision. That, in the case of arbitration, is conferred by delegation from the parties."

In the case at bar the power to the auditors proceeds from the appointment by the court.

The conclusion to be deduced from the foregoing review of
the authorities is, that since, in case of ordinary arbitration
the jurisdictional power to go on and hear and determine the
matters in controversy is derived from the consent of the con-
tending parties, and that the like power in cases such as the
case at bar is derived from the appointment by the court,
therefore, in neither case does such jurisdictional power depend
upon or proceed from the taking of the oath. The taking of
the oath is but a part of the prescribed ceremony or mode of
procedure, which, like any other ceremonial feature of court
procedure can be dispensed with, either by the express agree-
ment of the parties, or by their acquiesence and failure to
object.

In this case no step was had or taken before the auditor at
which appellants were not present and in which they were
not active participants.

GARY, P. J.    This case was before this court at the March
term, 1884, and is reported in 14 Ill. App. 598, where the
nature of the controversy is shown. At the October term,
1888, of the Superior Court, the proceedings shown by the
following order were had:

"Thereupon the court of its own motion enters the fol-
lowing order: This cause having come on to be heard, a jury
having been called and impaneled, counsel for both plaintiff
and defendants having made their opening statements to the
jury, and it appearing to the court from the statements of
counsel made in opening their case that the issues herein
involved the settling of accounts between plaintiff and defend-
ants which are in the nature of partnership accounts and involve
book accounts and the examination of many vouchers and
papers and the casting of accounts, it is ordered by the court,
of its own motion, that the jury be and the same is discharged,
and that the form of action is changed to that of account, and
the defendants, by their attorney, in open court making no
objection to this proceeding, and stating that they are willing
to account to the plaintiff, and ask that the plaintiff should
also account to them, it is ordered that the defendants do

account with the plaintiff, and further ordered that the plaintiff do account with the defendants,and further ordered that George M. Stevens be, and he is hereby appointed auditor in this case, under the law, who shall proceed with all due speed to appoint a time of hearing and proceed with the hearing of this case, according to law, and take an account between the parties, plaintiff and defendants, and take the evidence and report the same to this court, together with his conclusions thereon, finding in particular:

"First.    What were the net profits of the business carried on under the name of the New York store at 284 and 286 West Madison street, from about February 1, 1875, to about November 1, 1880?

"Second.    What interest, if any, the plaintiff has in said net profits?

"Third.    When did the plaintiff's interest in the net profit begin and when did it end?

"Fourth.    What amount, if any, the defendants are now owing the plaintiff on account of such net profits?

"Fifth.    What amount, if any, the plaintiff is owing the defendants on account of said business; to all of which the plaintiff, by his counsel, enters his exceptions herein."

Irregular and unwarrantable as this action of the court was, the appellants, by their conduct, encouraged, and can not now complain of it.    The order "that the form of action is changed to that of account " had no effect upon it while the pleadings remained in assumpsit.    Calling a thing that which it is not, does not change its nature, and in another application of the same principle, shortly to be mentioned, such incorrect nomenclature does not prevent a thing from becoming that which in its nature it is.

The only obstacle, besides such incorrect use of words, that is in the way of that order of the court being a proper order under Chap. 117, R. S., as to referees, is the absence of the agreement of the appellee to it; but the appellants can not raise that objection; therefore the action of the court, and the subsequent conduct of the cause by the parties, may be treated as governed by that chapter, even though the court and par-

ties did not have it in mind. This view of the case does not approve the order. A court has no power to direct the parties how they shall proceed. It may permit or prevent such a conduct of the cause as the parties may wish to pursue, and visit upon them appropriate consequences resulting from a difference of opinion as to the proper methods, but whether a party will or will not prosecute or defend, and the mode in which, if at all, he will do so, he is to determine. But this case, by the consent of the appellants, did get before Stevens, called an auditor; in fact, a referee. Treating the case as a reference under Chap. 117, to be which it only lacked the agreement of the appellee, and the appellants being estopped upon that point, the first two objections of the appellants, based upon the form of proceedings, and the lack of pleadings in an action of account, have no application.

The third objection, that the auditor (referee) was never sworn as such, was waived by the conduct of the appellants. Their counsel knew he was a master in chancery, and began to take testimony before him as such, when he knew that the order of appointment as auditor had not reached him, and when, therefore, he must presumably have known that he had taken no new oath, and continued the proceedings before him to the end without inquiry or objection on that score: K. & S. W. R. R. v. Alfred, 3 Ill. App. 511; and besides, there is neither statute nor constitution requiring that a referee shall be sworn.

May 10, 1889, the auditor (referee) filed his report, and May 14, 1889, the appellants filed fifteen exceptions thereto, and upon the conclusion of the argument upon them, filed also nineteen propositions of law for the court to pass upon.

May 25, 1889, the court announced its decision overruling the exceptions and confirming the report, and the case stood over to May 28, 1889, to give time for counsel to prepare the judgment form. On that day the counsel for appellants came in with a motion for the court to hear the evidence read, to pass upon and decide the various objections to it, and quash or approve the report. This motion the court refused to entertain or permit to be filed, on the ground that the case had been heard and decided.

Pardridge v. Ryan.

Perhaps the appellants had the right to file the motion and have it sustained or denied, but if it had been denied on the same ground upon which it was rejected, the result would have been the same, and the appellants are not injured by the method adopted.

On the hearing of the exceptions the appellants called Stevens as a witness, and this is a part of his testimony:

"What is your name?

"George M. Stevens.

"Are you the gentleman to whom this case was referred as referee?

"I am.

"Were you ever sworn as referee in the case?

"I believe not.

"Between the counsel what was the understanding upon which the evidence was received there with respect to the objections that were made to evidence that went in?

"It was agreed between the attorneys on both sides, I believe, that the objections should be made to any questions asked, taken down by the reporter, but that the referee would not pass upon the questions. They should be reserved in the testimony when it came before the court, if either party wanted to raise the question."

And as to this agreement the appellants' brief says "there is no dispute about this fact." This extract from the examination of Stevens is significant as showing that the distinction between an auditor in an action of account, and a referee under Chap. 117, had been lost sight of, and that the counsel for the appellants had, perhaps without reflection, felt himself to be in the position of counsel for a party to a cause which had been properly referred; had adapted himself to that position, and adopted such a course of proceedings as in his judgment was for the interest of his clients. There is little room to doubt that any mode of trial of the pending issue, other than that before the jury which had been just sworn, was welcome to him at the time the reference was made.

Now, with such an agreement as is recited in that testi-

mony, it is trifling with judicial procedure to hold that any exception would lie to the report, unless the report itself shows affirmatively that a wrong result has been reached. The parties have no right to heap upon the court the labor, to avoid which is the purpose of the reference.

All attorneys here are also solicitors in chancery, and familiar with the practice of courts of equity, where no exception to the report of a master will be heard by the court, unless the same matter has been made the ground of objection before the master, and his review of it asked. Hurd v. Goodrich, 59 Ill. 450; Prince v. Cutler, 69 Ill. 267.

The appointment of a referee to try a common law controversy stands upon the same reason as the reference to a master of a similar controversy in chancery, and the proceedings, founded upon the same necessity, should be similar.

The loudest complaint here is that Stevens received the incompetent testimony of one Levy, as to what was generally understood in the New York store as to the interest of the appellee; eulogizes him by name, and immediately follows with the statement, that "After examining all the evidence taken, and the books of the defendants, I think, from all the evidence and the circumstances as shown by these books, that the plaintiff is correct in his claims," etc.

It is not possible to know that if Levy had not testified the result would not have been the same. Indeed, from the brief for the appellants, it is a plausible conjecture that their counsel thinks it would, if nobody had testified. The other evidence in the case is such that, as this court held when the case was here before, the question of partnership and the specific terms of the contract between the parties was for the jury to pass upon. The fact that Stevens goes out of his way to repeat in his report the testimony of Levy, and speaks in his praise, does raise the suspicion that he attached weight to that testimony, but it is, after all, only an inference, and not an inevitable one, that he did. The parties have no right to frame rules for the conduct of business so loose as to impose upon the court labor that does not belong to it to perform, and then ask relief from the consequences, at least unless it appears with certainty that injustice has been done.

Pardridge v. Ryan.

The agreement that the referee should not pass upon objections made, was of necessity an agreement that he should receive what was offered. He was prevented by the act of the appellants from rejecting the testimony of Levy. The reception of that testimony is therefore not by itself alone a ground of exception to the report. No just complaint can be made that the referee made his report "after examining all the evidence taken," for that evidence ought to be the basis of his report.

It comes, then, to this: Shall his report be set aside because he reports the incompetent testimony and praises the witness, without any statement of what, in his judgment, was proved by that testimony, or what effect it had upon the result reached?

If parties on a trial before a jury should agree that all objections to evidence should be overruled by the judge, and reserved for use upon a motion for a new trial by the losing party, no court would consent to be so trifled with. In principle it is the same thing as is condemned in St. L., A. & T. H. R. R. Co. v. Thomas, 85 Ill. 464, and Smith v. Kimball, 128 Ill. 583. One Graham was a witness on the former trial, but had since left the State. What he then testified was competent, and properly admitted now. 1 Gr. Ev., Sec. 163; 1 Tay. Ev., 429.

Exceptions to the report of the referee, that he received incompetent testimony, objections to which the parties agreed he should not pass upon, will not lie. Whatever surplusage his report contains, not so connected in terms with the other matter that it may not be stricken out without changing the meaning of what is left, may be rejected. And so treating his report, his finding upon the main issue between the parties stands, like the verdict of a jury upon conflicting evidence, as a finality.

As to some minor matters, it is clear from the evidence reported that the result is wrong. The appellants were entitled to a credit for taxes and insurance beyond what they received to the amount of $542.49. All the exceptions relating to other matters were properly overruled. The offer of propositions of law for the court to act upon was irregular, and it makes no difference what that action was.

The judgment is, for the failure to credit appellants enough for taxes and insurance, reversed and the cause remanded, unless the appellee shall, within twenty days after the filing of this opinion, remit $542.49 of the judgment, in which case the judgment will be affirmed for the residue, $8,725.99.

In either event the appellants recover their costs here.

*Reversed and remanded upon certain conditions.*

GARNETT, J. To sustain the practice adopted by the Superior Court on the last trial of this case, is a task attended with some difficulty, but as it was forced upon the appellee against his protest and was approved by appellants, the opinion of the majority of the court does no injustice to appellants in denying them relief from errors they invited. But that consideration does not apply to the incompetent evidence of Levy.

Appellee's action was brought to recover a share of the profits of appellants' dry goods store, from February, 1875, to October 11, 1880. Appellants claimed that the agreement to share the profits with appellee was made about September 1, 1878. A large part of the profits were alleged to have accrued between February, 1875, and September 1, 1878.

On the hearing before Stevens, the witness Levy, introduced for the plaintiff, testified that he was employed in the store from April or May, 1875, to September or October, 1878. He was interrogated by plaintiff's attorney, as follows:

"Did you learn of or hear during the time you were there, anything said upon the subject of Mr. Ryan having any interest in the profits of Pardridge's store?"

The question was objected to by defendants' attorney on the ground of incompetency and irrelevancy. The auditor did not then rule upon the admissibility of the evidence, stipulation having been made between the parties that the objections made to evidence should be noted and not passed upon by the auditor, but reserved for the determination of the court. The witness answered, "It was so generally understood; we always supposed that was the case." One of the appellants' exceptions to the auditor's report was devoted to an

Pardridge v. Ryan.

attack on the admission of the evidence, but the exception was overruled by the court, on the ground that the evidence, though incompetent, was immaterial, and did not appear to have influenced the auditor. In this the court was clearly mistaken, as the auditor in his report takes the pains to re-produce, *verbatim*, the question and answer referred to, and then refers to the evidence of the witness in terms of special commendation. This, however, would not be the cause for reversal, if the record presented such a preponderance of evidence in favor of plaintiff on that point, as to make it clear that a new trial must terminate in the same judgment. No such condition of things can be found in the record.

There is difficulty in estimating whether the weight of the evidence fixes February, 1875, or September, 1878, as the time when the agreement to share the profits was made. A verdict for either party on this evidence, by a jury correctly instructed, could not be disturbed on the ground that it was contrary to the evidence.

Levy entered the store as an employe in April or May, 1875, and left there in September or October, 1878; and as he "always supposed" that Ryan had an interest in the profits, his supposition must naturally be referred to the entire period of his employment, and so had a strong tendency in the mind of the auditor, or referee, to make the date of the agreement at least as early as April or May, 1875.

The evidence, being purely hearsay and incompetent, should not have been made the foundation for the finding of a material fact. Whatever departure from approved practice may have been encouraged by appellants, they were entitled to a trial on the competent evidence only, which the record affirmatively shows has not been accorded to them. For this reason I dissent from the conclusion of the majority of the court on this point.