## Allen C. Story  v. William W. De Armond.

1. REFEREE—*Objection to His Report.*—Where the parties to a suit appoint a referee by agreement, each knowing the relations of the other to him before and at the time of his appointment, neither can be heard to urge such previous relation as a ground of objection to his report.

2. SAME—*Objections to be Waived, Partiality, etc.*—If parties in controversy choose to waive the rights of impartial trial, and purposely select as a referee a person who has formed opinions on the subject-matter of the controversy, or known to have partialities for or against the

respective parties, the court, without commending, will not set aside his report merely because of the character of the referee.

3. SAME—*When the Report Can Not be Impeached.*—If a party, knowing of the alleged disqualification of a referee, proceeds with the hearing, and omits to object until after the report is made, he can not have the report impeached for such disqualification.

4. SAME—*Proceeding Without Being Sworn—Waiver.*—Where the law requires that a referee should be sworn, the omission to comply with such requirement will be considered as waived by the party proceeding without objection.

5. SAME—*Presumptions as to Qualification.*—Where the law requires a referee to be sworn, the presumption is, in the absence of evidence to the contrary, that he was sworn.

6. SAME—*Judges of the Credibility of Witnesses.*—Referees, while performing the functions of a jury, are the judges of the credibility of the witnesses and the weight of the evidence, and their findings and conclusions of fact are entitled to the same considerations as the verdict of the jury.

Assumpsit, for clerk's services. Trial in the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Judgment for plaintiff on referee's report. Appeal by defendant. Heard in this court at the March term, 1898. Affirmed. Opinion filed May 26, 1898.

STORY, RUSSELL & STORY, attorneys for appellant.

WM. W. DE ARMOND, attorney for appellee; JOHN P. AHRENS, of counsel.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment rendered in an action of assumpsit by appellee against appellant for clerkly services alleged to have been performed by the former for the latter. The declaration contains a special count averring a contract to pay appellee for his services $75 per month, and the common *quantum meruit* count. The appellant pleaded non-assumpsit only, and the court, by agreement of the parties, appointed George F. Westover sole referee and the cause was referred to him. The referee made a very full and clear report of his findings, which is insufficiently abstracted, but which appellee's counsel has, to the great convenience of the court, set forth in his printed argument.

The following brief synopsis of the referee's report is contained in the abstract:

"Plaintiff entered employment July 31, 1885, at a salary of $75 a month, and continued at that salary until discharged November 16, 1894. That the plaintiff received the total sum of $5,549.97, and is chargeable with $81.53 interest on certain money which he held belonging to one of defendant's clients, leaving balance of $2,731, amount due, including interest to date of report, $3,022.64, and recommends judgment for said amount."

The court, on exceptions filed by appellant, disallowed the interest and entered judgment for $2,731.

Appellant filed twenty exceptions to the report, all of which, except exception 14, objecting to the allowance of interest, were overruled. Exception 10 is as follows:

"10. That the referee at the time of the reference and hitherto, and the plaintiff, maintained confidential relations, and the plaintiff has been a clerk of said referee during the whole period of said reference, and the said referee has been and remained strongly prejudiced against defendant, which facts were wholly unknown to defendant at the time," etc.

Five affidavits were read by appellant in support of his exceptions, and Mr. Westover, the referee, was called and testified orally on behalf of the plaintiff in opposition to exception 10.

The evidence *pro* and *con* is too lengthy to be recited, even in substance, in this opinion. We have carefully read and considered the affidavits read on behalf of appellant as they appear in the abstract, and also the testimony of the referee in the record, and are of opinion that the court ruled correctly in overruling exception 10, above quoted. The exception contains two charges: First, that at the time of the reference and hitherto, the plaintiff maintained confidential relations with, and has been a clerk of the referee during the whole period of the reference. Second, that the referee has been and remained strongly prejudiced against appellant, which facts were wholly unknown to appellant at the time, etc.

The appellant, in his affidavit, says : " After the report was made, deponent accidentally learned for the first time that plaintiff had been in Westover's employ and had attended to business for him during the entire year." This is hearsay. Appellant does not state, as of his own knowledge, that appellee had been in the referee's employ. He says he so learned. Westover, the referee, testified that he did not remember of appellee having ever been in his employ; that he certainly had not been since his discharge by Mr. Story (which the evidence shows was November 16, 1894, more than six months before the suit was commenced); that he may have sometimes asked De Armond, when he was going to court for Story, to answer to some case on general call, or something of that kind, as a courtesy, never anything more. Referred to in the affidavit of Mr. Story and attached thereto is a card, of which the following is a copy :

" To THE CHICAGO LAW INSTITUTE:

I hereby certify that W. W. De Armond, Esq., the bearer, is an assistant in my office; that he is not practicing law except as employed by me; that he is a suitable person to have access to the rooms of the institute; that he is authorized, until further notice, to receipt for books in my name, for my exclusive use; and that I will pay any fine or damages which may arise through him to the said institute.

GEORGE F. WESTOVER.

I hereby agree to use the library for Geo. F. Westover and myself exclusively, and in no case draw any of the books in the library, except at the request and for the personal use of the said Geo. F. Westover.

W. W. DE ARMOND.

Chicago, Jan. 13, 1896."

This is printed, with the exception of the names, the word "assistant," the date "Jan. 13," and the figure "6," showing that it is a form used by the Law Institute for the withdrawal of books by non-members of the institute on the certificate of members. Mr. Westover testifies on cross-examination, that he probably signed such a card (the

original was not produced on the hearing), but that he knew nothing of the contents of it, and never did; that he recollected that De Armond had some cases which he had turned over to him long before, and that after he left the office, he consulted with him about questions of law arising in the cases, and that very likely he signed the card in connection with those cases.

While it is doubtless true that the signing of the card in question was not strictly in accordance with the rules of the Law Institute, we do not think the circumstance sufficient to overcome Westover's sworn statement that appellee was never in his employ.

The referee, in his testimony, denies that he was at all prejudiced against or entertained any ill-feeling toward appellant, and denies all knowledge of any estrangement between them.

We can not discover in the proceedings before the referee any evidence of unfairness, partiality or prejudice on his part. On the contrary, the proceedings seem to have been conducted, in so far as he was concerned, with the utmost fairness and impartiality.

The evidence is that both appellant and appellee had long been acquainted with Mr. Westover; that before the reference, each of them applied to him to procure, if possible, a settlement of the case; that they both expressed a willingness to leave the matter to him; that he declined to act as arbitrator between them, giving as a reason that an arbitrator's decision, if wrong, could not be corrected on review, but consented to act as referee, because, on review, errors, if any, could be corrected. The parties had been in the same office with Mr. Westover for four or five years, the appellee during that time being appellant's clerk, and the referee a *quasi* partner of Mr. Story under the firm name of Story, Westover & Story. Thus, each of the parties had ample opportunity to know the relation which existed between the referee and the other, and with such knowledge, each, doubtless, having confidence in the ability and integrity of Mr. Westover, chose him as referee. But even though each

so chose him from a less honorable motive, namely, because he supposed or hoped he would be more friendly to him, this would not change the aspect ¡of the matter. Each having known the relations of the other to the referee before and at the time of consent to the reference, neither can now be heard to urge such previous relation as a ground of objection to the report.

In Van Blaricum v. The People, 16 Ill. 364, a juror who had formed and expressed an opinion was accepted on the panel without objection, and this was assigned as error, but the court overruled the assignment, saying: "If the parties chose to have their cause tried by a prejudiced juror, it was not for the court to refuse them the right." The same is true in the case of an arbitrator. Morse, after stating matters which would disqualify an arbitrator, among them prejudice against one of the parties, says:

"But the parties may, if they choose, waive the objection which might exist on any of the preceding grounds. They are at liberty to select a person interested, or a person prejudiced, a relation, or an enemy of either of them. Judge Cushing said, in Strong v. Strong, 9 Cush. 560: "If indeed parties in controversy choose to waive the rights of impartial trial, and purposely and avowedly select as arbitrators persons having formed opinions on the subject-matter, or known to have partialities for and against the respective parties, the court, without commending, will not set aside the award merely because of the character of the arbitrators." And Chief Justice Shaw said, in Fox v. Hazelton, 10 Pick. 275: " *Volenti non fit injuria.* If parties are content to submit questions in controversy to those who are known to have formed and expressed opinions upon the subject-matter, or who are known to have partialities or prejudices for or against the respective parties, an award made by such arbitrators is binding." As it often happens, each party selects some one in whose favorable opinion he reposes confidence, and it is trusted that the opposite prejudices will balance each other. Awards made by such referees can not be impeached."

The rule is the same if a party, knowing of the alleged disqualification, proceeds with the hearing without objection, and omits to object until after the report is made.

While the affidavits charge prejudice generally, there is nothing in appellant's or any of the affidavits showing when the prejudice, if any, came to appellant's knowledge.

Morse recognizes that there is a distinction between such a reference as the one under discussion and a submission to arbitration, and says : " Indeed, the language of the courts in rendering their adjudications has nearly always been so lax, that the distinctions properly existing between the various descriptions of reference and submission have become hopelessly confused." Morse on Arbitration and Award, 49. On a submission to arbitration under the statute, the arbitrators are judges, and their award is final, and the court can not review it on the merits. It is beyond the province of the court to pass on the merits of the controversy. On the other hand, the province of a referee is substantially the same as that of a master in chancery; the reference to him is to report the evidence to the court with his conclusions of law and fact, (Stats. E. 117, Sec. 1,) and his conclusions are not final, because the court, on exceptions being taken to the report, can hear and determine the entire controversy on the merits, and the judgment, when pronounced, is the judgment of the court and not of the referee.

It is objected that permitting the referee to testify orally on the hearing of exceptions to his report was error. This question is not argued, appellant's counsel merely citing the following cases, none of which is in point :

In Ward v. Gould, 5 Pick. 291, affidavits of the arbitrators giving a meaning to their report which the words used did not convey, were read. The court held that it could not, for the purpose of construing the report, consider the affidavits.

In Newland v. Douglas, 2 Johns. 62, the testimony of arbitrators was offered to prove a mistake in their award, in other words, to impeach the award. The testimony was held inadmissible.

In Pullman v. Pensoneau, 33 Ill. 375, the court say: "As a general rule arbitrators will not be permitted to give evidence to impeach their award."

In Stone v. Atwood et al., 28 Ill. 30, 43, a bill was filed to have an award corrected on account of an alleged mistake, and testimony tending to prove the mistake having been introduced by the complainant, one of the arbitrators was called and testified on behalf of the defendant. This was assigned as error. The court say: "Like a juror, he can not be called to impeach his award, but like him, he can be called to sustain it. That was the purpose and office of the testimony of the arbitrator called by Atwood."

"In proceedings under a bill in equity, seeking specific performance of an award concerning the dissolution of a partnership, the arbitrators were permitted to testify concerning what matters were presented before them, and even whether or not they had decided all the matter referred." Morse on Arb. and Award, 361, citing Hawksworth v. Brammall, 5 Ill. & Cr. 281.

In Robinson v. Shanks et al., 118 Ind. 125, cited by appellant's counsel, a motion was made to set aside an award on the ground that one of the parties had, pending the arbitration, counseled and advised the arbitrators, induced one of them to go to his house, remain there all night and partake of his hospitality, and also induced two of them to go with him to the hotel and dine at his expense. Affidavits were filed in support of the motion, and on the hearing of the motion the court permitted the arbitrators to be examined as witnesses in open court. The referee was not examined with reference to the ground of his conclusions, or as to any matter which had been before him as referee, but merely in reference to the charges of prejudice and partiality made against him by appellant, and we are of opinion that his testimony was properly admitted.

It is objected that the referee was not sworn. As to whether he was or not, the record is silent. The proceeding by reference is strictly statutory, and the statute, chapter 117, does not require that the referee shall be sworn.

In support of this contention, appellant relies on chapter 10 of the statute in relation to arbitrators, which requires that arbitrators shall be sworn, but the statute in relation to arbitrators does not, in any respect, govern the proceeding under chapter 117 in respect to referees. Counsel for appellant contend that either chapter 117, in force July 1, 1872, is repealed by chapter 10, in force July 1, 1873, or if not, the statute must be construed together as being in *pari materia*, and that so construing them, the reference to a single referee was unauthorized, inasmuch as chapter 10 provides for a reference to three arbitrators. We think it sufficiently apparent, from a mere inspection of the two statutes, that they provide for distinct and independent proceedings, that there is no repugnancy between them, and that the proceedings under each statute must be considered solely with reference to the statute under which they purport to be. In Morey v. Warrior Mower Co., 90 Ill. 307, the court recognizes both statutes as being in force, as they undoubtedly are. Even if the law required that the referee should be sworn, the omission to comply with such requirement would have to be considered waived by appellant. The record shows that he was present the first time appointed for taking testimony before the referee, that there was an adjournment till another time by his request, and that he authorized the referee to proceed in his absence, if he should not appear at the time to which the adjournment was had; also, that appellant appeared by attorney, from time to time, before the referee, and cross-examined and examined witnesses, in addition to which it does not appear when appellant first learned that the referee was not sworn, if such is the fact. See Pardridge v. Ryan, 134 Ill. 247, 254.

If the law required the referee to be sworn, the presumption would be, in the absence of evidence to the contrary, that he was sworn (Garrity v. Hamburgher Co., 136 Ill. 499, 510), and there is no evidence on the record that he was not sworn.

It appears from the record that February 2, 1897, the court, on the motion of appellant, referred back to the

referee his report filed prior to that date, with directions to receive, hear and pass on such objections as might be presented to him by the parties, or either of them, within ten days from that date, and to make such corrections or amendments of his report as he might deem advisable. Appellant now objects to this order made on his own motion, and to the action of the referee, which was strictly in accordance with the order. To put the matter plainly, appellant requested the court that a certain thing should be done, the court acceded to his request, and the thing was done, and now he complains of it having been done. It is clear that he can not be heard to make such objection. Appellant contends that the referee's power was exhausted when he made his report, and the court was powerless to refer it back to him. By the very terms of section 1 of the statute the court has power to refer a cause back to the referee. Aside from the statute, we are of opinion that the power of the court to refer back was ample. "The appointment of ·a referee in a common law controversy stands upon the same reason as the reference to a master of a similar controversy in chancery, and the proceedings founded on a similar necessity should be similar." Pardridge v. Ryan, 35 Ill. App. 230, 242.

In Cumberland v. North Yarmouth, 4 Greenl. (Me.) 459, it was objected that the referee had no power to make a second report after recommitment. The recommitment was by order of the court. The court (Ib. 464) overruled the objection, saying, among other things: "Recommitments of reports made under a rule of court, or under a submission before a justice, in regard to which the Common Pleas has, by statute, the same power as it has over its own rules, have been uniformly made, both in this court and the Common Pleas, whenever, in the opinion of the court, the purposes of justice required such a course." Cases having been cited in support of the position that the referees having made their report, their power was exhausted, the court distinguished between the cases cited and the case then at bar, saying: "But all these were cases of submission to arbi-

trate out of court, in some of which they were expressly
restricted as to time, and in others their power was held to
be at an end after it had been once exercised."

Having thus disposed of the objections which, if sustained,
would exclude consideration of the report, some, if not all
of which have, perhaps, received more attention than they
deserve, we will next consider the objections which go to
the proceedings before the referee and to his conclusions.
It is objected that the finding of the referee that there was a
contract between the parties for the payment by appellant
to appellee of $75 per month, as compensation for the lat-
ter's services, is contrary to the evidence. This finding was
based mainly on the testimony of appellee and Witherell,
and two documents introduced in evidence by the appellee,
marked Exhibit " B " and Exhibit " C," respectively.

The referee found that appellee's employment by appel-
lant commenced July 31, 1885, and terminated November
16, 1894, and no fault seems to have been found with this
finding.

April 1, 1886, one Bailey, William C. Witherell, and
appellant, entered into a sort of partnership, by the terms
of which the net profits of the business were to be divided
between them in the proportion of three-fifths to appellant,
one-fifth to Bailey and one-fifth to Witherell. The partner-
ship was dissolved by the retirement of Bailey, January 20,
1887. Appellant, Witherell and Bailey met together for
the purpose of ascertaining the net earnings, etc., of the
partnership up to the date of dissolution, and the amount
then due each partner. Appellee, being appellant's clerk,
was present and assisted in the computations. Exhibit " B "
consists of six sheets or leaves, on which are set down fig-
ures showing the gross earnings, the total expenses, including
expenses paid and liabilities remaining unpaid, the profits,
the share of the net profits of each partner, the state of the
account of each partner, and the amount due him January
20, 1887. In the list of liabilities or expenses remaining
unpaid, which list is in the handwriting of Mr. Bailey, is
the following: " De Armond, $620." The gross amount

of earnings was first figured at $7,761.57.    The amount of liabilities unpaid, including the liability to De Armond of $620, was set down by Mr. Bailey at $812.29.    This was deducted from the gross earnings, $7,761.57, leaving the balance $6,949.28, and from this last amount was deducted the expenses which had been ᴋpaid, $1,660.05, leaving net profits to be divided $5,257.23.    The last three amounts are set down on page 2 of the exhibit in Mr. Story's handwriting, showing that he adopted the figures, and the partners, appellant, Witherell and Bailey, settled on the basis of the net income ascertained as above stated.    Appellee, cross-examined by appellant in person with regard to Exhibit "C," was questioned and answered as follows :    Q.    "In whose handwriting are the figures not included in the red or blue lines?"    A.    "They are in Mr. Story's handwriting."    This evidence is not abstracted.    Original Exhibit "B" has been certified to us in conformity with a rule of the court, and we have examined it, and find that the figures on page 2 of the exhibit "not included in the red or blue lines," are the figures finally agreed on and accepted as a basis of settlement, showing gross income, gross expense and net income. These figures are in six lines, and are alluded to in the printed argument of appellant's counsel as "six words," and are admitted to be in appellant's writing.

From the date when the partnership commenced, April 1, 1886, to the date of its dissolution, January 20, 1887, was nine and two-thirds months.    Appellee testified that during that time he received only $105.    Add to this $620, the admitted liability to him, and we have $725, which, for nine and two-thirds months, is at the rate of $75 per month.

From January 31, 1887, until February, 1890, the appellant and Mr. Witherell continued in business under an arrangement by which the latter was to receive a proportion of the profits of the business.    Exhibit "B" is a statement of the account between them which was accepted by both as a basis of settlement.    This statement contains certain items of credit in favor of Mr. Story, one of the items

being, " By due De Armond, $1,260.77," and the referee
finds from the evidence as to the sum paid appellee during
the three years from January 31, 1887, till February 1, 1890,
that the amount of such sums added to the $1,260.77 remain-
ing unpaid, showed appellee's compensation for the three
years to have been in the aggregate (within some cents)
equal to $75 per month.

Appellant now objects to the introduction in evidence of
Exhibits " B " and " C," alleging that they were not com-
petent evidence, and in addition that there are certain
erasures on Exhibit "B " which¹ should have been explained.
It may be observed that one would naturally expect to find
erasures and figures crossed out on sheets used in figuring
the condition of such a business as that of appellant and
his partners, extending through nine months. Appellant
personally cross-examined appellee before the referee in
regard to both exhibits, and no objection was made to their
introduction in evidence, nor was any explanation called
for, nor any motion made to exclude them. It is very
clearly shown by the report of the referee, that there is no
erasure on Exhibit " B " which affects in any way the con-
clusion that the liability of $620 to appellee was deducted
from the gross income of the partners, and that it was
charged by appellant against Bailey and Witherell and
acceded to by them. Appellee testified that Story agreed
to pay him $75 per month. Appellant, however, denies
that he so agreed.

William G. Witherell, formerly in business with appel-
lant, was called as a witness by appellant, and testified on
his direct examination : " Mr. De Armond has asked me
and tried to have me recollect these things. I told Mr. De
Armond I had an impression he was getting $75 per month,
but I don't know how I got it. I don't know how I heard
it, but I thought he was getting $75 per month there, and
that Mr. Story also got him a position in a night school,
and he was to make from $12 to $15 a week there." This
witness also testified that, at the time he left, there was an
item charged as due to Mr. De Armond, about $1,200, so he

thought that Story charged him with a certain amount for salary due De Armond, and he made no objection to it. This the witness testified from memory, thus corroborating Exhibit " C," in which the item is $1,260.77.

"Referees, while performing the functions of a jury, are the judges of the credibility of the witnesses and the weight of the evidence, and their findings and conclusions of fact are entitled to the same consideration the verdict of a jury receives." Butler v. Randall, 25 Ill. App. 586, 590; opinion adopted by Supreme Court in Butler v. Cornell, Adm'r, et al., 148 Ill. 276.

Such being the rule, the finding of the referee that appellant contracted with appellee to pay him $75 per month, can not be set aside unless manifestly contrary to the weight of the evidence. We can not say that the finding either as to the contract, or the amount the appellee is entitled to recover, exclusive of interest, is against the weight of the evidence. It certainly is not manifestly so. Quite a number of witnesses testified that such services as the appellee performed for appellant were worth from $75 to $150 per month, and the referee, under the *quantum meruit* count, and without reference to the count on the contract, might well have found from the evidence that appellee was entitled to recover $75 per month.

Other objections are urged, none of which we consider ground for reversal. A motion of appellee to strike from the abstract and from appellant's argument certain photographs, was reserved till the hearing. The photographs being in the abstract were doubtless intended by appellant as reproductions of certain documents introduced in evidence, copies of which are in the transcript of the record. Without passing on the question whether the photographs are or not correct representations, the motion will be overruled.

The judgment will be affirmed.