## Samuel H. Leathe v. Edward L. Thomas.

1. JUDGMENTS—*Of Foreign State Valid Here Under Sec. 1, Art. 4 of the United States Constitution.*—Under section 1, article 4 of the United States Constitution, a judgment rendered in a foreign state is conclusive in this state as to all defenses that were made, or might have been made, in contesting the cause of action sued upon.

2. SAME—*How Judgments of Sister States Differ from Those of Foreign Countries.*—Judgments recovered in one state of the Union, when proved in the courts of another, differ from judgments recovered in a foreign country, in no other respect than that of not being re-examined upon the merits, nor impeachable for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties.

3. SAME—*Where a Third Party Defends in Place of the Defendant, He is Bound By.*—If a party who has an interest in the defense of a suit at law receives notice from the defendant to defend it, and does defend it to the exclusion of the real defendant, he is bound by the judgment.

4. STATUTES—*Of Foreign States Must Be Specially Pleaded.*—A statute of a foreign state if relied upon as a defense must be specially pleaded, since the courts of one state do not take judicial cognizance of the laws of a sister state.

5. SET-OFF—*Plea of Set-off Allowed to Judgments.*—The plea of set-off to judgments is allowed by the law of this state.

6. PLEADING—*General Demurrer Lies to Plea Not Presenting a Defense on Its Face.*—A general demurrer lies to a plea which on its face does not present a defense to the action.

7. SAME—*To What Pleas a Special Demurrer Lies.*—A special demurrer lies to a fatal defect in the plea, which, if called to the attention of the court, can be cured, but if not pointed out, is not fatal to the plea.

8. SAME—*When Defect Requires Proof of Fact Not Disclosed by Declaration or Not Judicially Noticed.*—Where the defect in the plea requires proof of some fact not disclosed by the declaration, or arising by the application of the law judicially taken notice of by the court, then the demurrer is properly overruled.

9. SAME—*To Have the Overruling of Demurrer Reviewed Party Must Abide by Demurrer.*—If a party wishes to have the action of the court in overruling his demurrer reviewed in this court, he must abide by his demurrer.

10. SAME—*After Demurrer Overruled, Party Can Not Move in Arrest of Judgment on Same Ground.*—After a party has had a judgment of the court overruling a demurrer to a declaration, he can not again invoke it for the same reasons by moving in arrest.

Leathe v. Thomas.

11. SAME—*Nature of a Plea of Set-off.*—A plea of set-off is in the nature of a declaration in cross-action. It is a counter-claim as to which the defendant is plaintiff and must establish his right as upon a distinct action. It is tantamount to the institution of a cross-action by the defendant against the plaintiff in the same proceeding. Being in the nature of a cross-action, it is governed by the same principles as would govern an original action for the same cause.

12. STATUTE OF LIMITATIONS—*As Affecting Foreign Judgments.*—A judgment valid and conclusive in the state where rendered, will be enforced in the other states upon the same footing as domestic judgments within such period of limitations as may be prescribed in respect of such judgments by the laws of the state where it is sought to be enforced.

13. SAME—*United States Constitution Does Not Restrain a State from Regulating Remedy on Judgment of Other States.*—There is no clause in the Constitution of the United States which restrains the right in each state to legislate upon the remedy in suits on judgments of other states exclusive of all interference with their merits.

14. CHANCERY PRACTICE—*Decree Dismissing Bill Does Not Conclusively Establish the Truth of All Matters of Defense Alleged.*—While a decree in absolute terms dismissing a bill, is an adjudication of the merit s of the controversy, it does not establish conclusively the truth of all matters of defense alleged where more than one defense has been pleaded.

15. REFEREE—*His Finding Entitled to the Same Consideration as the Verdict of a Jury.*—In passing upon a question of fact the finding of a referee, who was appointed by the court with the consent of both parties, and who saw and heard the witnesses, is entitled to the same consideration as the verdict of a jury.

16. PRACTICE—*Laws of This State Control Practice in the Courts.*—The laws of this state control the practice in our courts when a remedy is sought.

17. SAME—*Objections Not Made in the Trial Court Are Waived.*—An objection that the judgment is in excess of the *ad damnum*, not made before the court which rendered judgment, is considered as waived.

Debt, on two judgments. Appeal from the Circuit Court of St. Clair County; the Hon. MARTIN W. SCHAEFER, Judge presiding. Heard in this court at the February term, 1903. Affirmed. Opinion filed June 15, 1903.

This suit was brought on two judgments rendered by the Circuit Court of St. Louis, State of Missouri, in favor of appellant and against appellee. The first judgment, of date March 5, 1896, was for $2,278.63; the second, of date January 5, 1897, was for $923.75.

The declaration was in the usual form of debt. The validity of the judgments was not questioned. Pleas of set-off were filed.

The first pleads the common counts for money had and received, interest and account stated.

The second plea is based on an alleged contract of January 24, 1893, for building the Belleville & St. Louis Railway, and the proceedings of March 25, 1893, by which the charter of the Belleville City Railway Company was substituted, and avers that plaintiff sold the bonds of said latter company for $500,000, and received the money therefor; that plaintiff had expended $300,000 in building the railway, and that there was due defendant as per statement in the contract, to wit, $70,000, which was to be paid defendant as in the contract specified, and which plaintiff should have paid out of the $200,000 remaining in his hands.

The third plea is based on the consideration for the conveyance to plaintiff, March 25, 1893, by the Belleville & St. Louis Railway Company, of certain property, etc., named in its deed, for $1, and other valuable considerations; that the other valuable consideration was the promise of plaintiff to pay the indebtedness of said company then existing, including the debt to defendant of, to wit, $60,000. It alleges that at the September term, 1893, of the St. Clair County Circuit Court, defendant brought suit against said company for the amount so due him; that the company notified plaintiff herein to defend, and that he employed counsel and defended the suit, and that defendant herein obtained judgment for $53,022.23, which judgment is still in full force and effect; it avers and sets up plaintiff's efforts to enjoin the prosecution of said suit, the issues presented, the full hearing by the court and the dismissal of plaintiff's bill.

The fourth plea sets out the deed *in haec verba* from the Belleville & St. Louis Railway Company to plaintiff, of March 25, 1893, and avers that the property conveyed thereby was of the value, to wit, $100,000; that the company at the time was indebted to divers persons in the sum,

Leathe v. Thomas.

to wit, of $90,000, including an indebtedness to defendant of, to wit, $65,000, of which indebtedness plaintiff. had full notice; that the consideration of said deed was the promise of plaintiff then and there made to pay said indebtedness of the company, including defendant's claim, within a reasonable time thereafter, which time has long since elapsed, and the plaintiff has not paid said sum, or any part thereof.

To each of these pleas a general demurrer was filed and to the second and third pleas special demurrers were filed.

The special demurrer to the second plea is in substance that the matter in the said plea set forth, can not be set off in law against the cause of action sued for in this case, and further that the damages sought to be recovered are unliquidated and therefore not subject to be set off.

The special demurrer to the third plea is to the same effect.

All the demurrers were overruled.

Plaintiff then filed general replications to all the pleas and a special replication to the third and fourth pleas, in substance, as follows:

"And for further replication to the third and fourth pleas of set-off the plaintiff says that the defendant heretofore impleaded him, the plaintiff, in an action in assumpsit, begun in the name of the Belleville & St. Louis Railway Company for the use of Edward L. Thomas, in the Circuit Court of St. Clair County, Illinois, to the April term, A. D. 1894, in a plea of trespass on the case on promises, to the damage of the plaintiff of $60,000, for not performing the very same promises in said third and fourth pleas of set-off mentioned, and such proceedings were thereupon had that at the same term of said court said cause was removed to the Circuit Court of the United States for the Southern District of Illinois, and afterward in said court last named, which had jurisdiction of the persons and the subject-matter, such proceedings were had that by the consideration of said court the issues were found for the defendant in said cause (the plaintiff herein), and that he, said plaintiff herein, recovered his costs by him in defense of said cause expended, and this the plaintiff is ready to verify."

To the replication *nul tiel record* was pleaded.

At the September term, 1898, by consent of the parties,

the cause was referred to L. D. Turner, as referee, to take evidence, and to report the facts and his conclusions. At the January term, 1900, the court, by consent of parties, accepted the resignation of Turner as referee, and appointed Marshall W. Weir in his place. At the January term, 1902, the referee reported a balance due appellee, as follows:

| | | |
|---|---:|---:|
| Defendant's judgment Dec. 21, 1893, | | $53,022 23 |
| Int. to Jan. 11, 1902, 8 years, 20 days, 5 per cent... | | 21,356 17 |
| | | $74,378 40 |
| Deduct plaintiff's judgments: | | |
| Judgment March 5, '96............$2,278 63 | | |
| Int. on $337.27, 8 per cent, 5 yr., 10. mon., 6 days.................... | 157 83 | |
| 1, 41.36.......................... | 681 40 | |
| Judgment January 5, '97........... | 923 75 | |
| Int. 6 per cent, 5 yrs., 6 days........ | 278 04 | 4,319 65 |
| Balance...................... | | $70,058 75 |

For which judgment is recommended in favor of defendant, Edward L. Thomas.

To this amount $1,167.62 was added, being interest on the amount found due from February 14, 1902, to June 30, 1902, making the total judgment $71,326.37.

Plaintiff excepted to the referee's report and to the judgment, and brings the case here on appeal.

The substance of the exceptions to the report is as follows:

1. The finding that the plaintiff, Samuel H. Leathe, at any time promised to pay the indebtedness of the Belleville & St. Louis Railway Company to defendant, Edward L. Thomas, is not supported by the evidence.

2. The evidence shows that the relation between said plaintiff and defendant were all covered by the contract of January 24, 1893, and the referee should have so found.

3. The referee errs in finding that there is a preponderance of the testimony, to the effect that the plaintiff agreed as a consideration for the conveyance to him of the property and assets of the Belleville & St. Louis Railway Company to pay the debts of the company.

4. The finding of facts is incomplete, misleading and erroneous; it draws attention to some occurrences relied upon to sustain them, leaving out the most important.

5. The referee failed to find that the claim made that Leathe absolutely promised to pay the debts of the Belleville & St. Louis Railway Company, has been adjudicated in favor of said Leathe, and against said Thomas.

6. The referee errs in giving prominence to the fact that the agreement of January 24, 1893, was not at the time signed by Leathe.

7. The plaintiff further excepts because the referee failed to consider the amount which said Thomas has realized on said judgment recovered by him against the said Belleville & St. Louis Railway Company, which amount is equal to or in excess of the amount for which the said referee recommended judgment in favor of the said Edward L. Thomas.

8. The plaintiff further excepts because the said referee recommends judgment against the plaintiff for the sum of $70,058.75, and because the referee failed to recommend that judgment be entered in favor of the plaintiff for the amount of the judgments upon which the suit is based, with legal interest.

The following errors are assigned on the record:

1. The court erred in overruling the demurrer to pleas of set-off.

2. The court erred in entertaining and adjudicating upon said pleas. It had no jurisdiction of the subject-matter of said pleas.

3. The court erred in overruling exceptions of appellant to the report of referee.

4. The court erred in rendering any judgment against plaintiff.

5. The court erred in rendering judgment for the amount of $71,266.77, because said amount, even if the pleas could be entertained and had been proved, is grossly excessive, in that no credits are given to appellant for different amounts aggregating in excess of $60,000, which appellee had theretofore been paid, and for which appellant is entitled to credit.

6. The court erred in not rendering judgment for the plaintiff for the amount, with interest, of the judgments in question, upon which this suit is founded.

The evidence tends to show this history of the case: In 1890 and 1891, appellee, Edward L. Thomas, was engaged in building the Belleville & St. Louis Railway. Associated with him was Capt. W. A. Adams, who invested about $23,000. Adams died in 1891, and his heirs withdrew from the enterprise. Thomas had invested a large sum of money, and had incurred indebtedness in addition thereto. He then sought other pecuniary assistance, and through one L. M. Chipley, who negotiated between Thomas and Leathe, a wealthy citizen of St. Louis, the latter was induced to invest in the enterprise. Before doing so, he received a letter from appellee, which gave the status of the enterprise, its debts, etc., with a statement that Adams had invested $23,000, and that he, Thomas, about $50,000. A part of this latter sum appears to have been liabilities which Thomas had incurred. In this letter he states:

"I am willing to abide by this statement, and will make any instruments to carry it out, leaving in your hands funds that would come to me until all matters are paid and satisfied, so that the company will be kept whole."

The result of the negotiations with appellant was the following proposition to Leathe, referred to as the contract of January 24, 1893:

"ST. LOUIS, January 24, 1893.

It is agreed that we will transfer to Samuel H. Leathe, $255,000 of the stock of the Belleville and St. Louis Railway Company and to Lucien M. Chipley $78,300 of said stock.

Said Samuel H. Leathe and Lucien M. Chipley to put up funds to carry on said enterprise and to negotiate and sell $500,000 five per cent bonds of said company. The present bonds, $150,000, to be placed in the hands of Samuel H. Leathe to hold until other bonds are issued.

He to advance the amount necessary to take up four bonds now held by Mrs. Johnson, $2,000 with interest, and Third National Bank $750 with interest, in St. Louis.

Same proportion of stock to be maintained in coal or other companies organized to carry out the project, as per

letter of January 12, 1893, to S. H. Leathe by Edward L. Thomas.

Edward L. Thomas to have $104,000 of stock, Bart S. Adams $50,000 and John T. Taylor $12,700; each party to receive back amounts advanced to the enterprise as soon as bonds are sold.

Said Thomas and Adams to receive amounts as per statement rendered, and said Leathe to receive amount to be advanced by him and balance to go into the treasury of the Railway Company.

First proceeds of bonds to be applied to payments of amounts advanced by said Leathe until satisfied.

Dated Jan. 24th, 1893.

> EDWARD L. THOMAS,
> BART S. ADAMS,
> SAMUEL H. LEATHE,
> LUCIEN M. CHIPLEY.

In consideration of the above agreement, I agree to leave in the hands of Mr. Leathe, all sums coming to me as a guarantee of the statements made in my letter of January 12, 1893, and as security to hold until all matters are fully arranged and paid, for which I am responsible, as per said letter and statement rendered.

> EDWARD L. THOMAS."

The proposed contract was delivered to Leathe, but was not signed by him until June or July of 1903. The evidence shows, however, that he proceeded to act, receiving $150,000 bonds of the company, employing graders, engineers, securing rights of way and coal lands, but taking the title to such acquisitions in his own name.

The enterprise contemplated the operation of coal property as an adjunct to the railway.

The charter of the St. Louis and Belleville Railway Company was obtained under the general railroad incorporation law. Some time between January, 1893, and March 25, 1893, Leathe learned that Charles W. Thomas owned or controlled a special charter, granted before 1870, for the Belleville City Railway Company. The charter being more liberal in its terms than the charter of the Belleville & St. Louis Railway Company, Leathe insisted that it should be procured and the enterprise conducted under it. This charter was accordingly secured by appel-.

lee, Edward L. Thomas, transferring $25,000 of his stock in the Belleville & St. Louis Railway Company to his brother, Charles W. Thomas. To effect the re-organization, it was necessary that the title to the property of the Belleville & St. Louis Railway Company should be transferred to the Belleville City Railway Company.

To this end and for settling other details, the following proceedings were had: Stockholders' meetings of both these companies, and of the Crown Coal Company were held March 25, 1893. The stock of the Belleville City Railway Company was then increased from $50,000 to $500,000, to correspond with the amount of stock of the Belleville & St. Louis Railway Company, and the Crown Coal Company was re-organized as the Crown Coal & Tow Company, and its stock increased from $30,000 to $200,000.

The Belleville & St. Louis Railway conveyed by deed its property to appellant. The consideration is expressed as follows:

"In consideration of one dollar to it in hand paid by Samuel H. Leathe of the city of St. Louis, Missouri, and of other valuable considerations to it from him moving."

At the same time and place, at a meeting of the directors of the Belleville City Railway Company, the following proceedings were had, as shown on the records of the company:

A call of 100 per cent was made upon the stock of the company. Leathe proposed to sell and convey to the company for $499,500, certain property referred to in his deed then tendered for examination. The proposition was accepted. Charles W. Thomas then assigned and transferred to Leathe upon the stock transfer book of the company, 4,995 shares of its stock, subject to calls made thereon. The deed offered by Leathe was accepted as full payment of the call of 100 per cent, made upon his 4,995 shares of stock, upon the condition that he would float the $500,000 of the bonds of the company, heretofore authorized to be issued, any of such bonds as he should sell to net the company such a price as may be hereafter agreed

upon between him and the board of directors of the company, and all bonds taken by him, or that may be paid out for property or prior indebtedness of the company, to be accounted for by him at par, to the end that the railway of this company may be at once constructed and operated from some point within the original city of Belleville to the Mississippi; and upon further condition that Leathe protect the company from any decree foreclosing the mortgage to secure said bonds until one year after its railway is in operation.

Out of the 4,995 shares of stock of the Belleville City Railway Company thus assigned to Leathe, he transferred shares of stock to the previous holders of stock in the proportioned to their previous holdings.

Leathe, by his deed, conveyed to the Belleville City Railway Company all that he received by deed from the Belleville & St. Louis Railway Company, and certain real estate, rights of way and other property connected with Belleville & St. Louis Railway Company, in amounts the enterprise to which he had taken title in his own name. He also at the same time conveyed by deed to the Crown Coal & Tow Company, an adjunct of the railway company, certain real estate, tugs, barges, etc., to which he held title.

The conveyance to the Belleville City Railway Company was received in full payment of the stock of said company in order that its stock should stand as paid up stock.

The capital stock of the Belleville & St. Louis Railway Company was $500,000, consisting of 5,000 shares at par value of $100 per share. Under the contract of January 24, 1893, Leathe was to have $255,000 of the stock; Chipley $78,300; appellee Thomas $104,000; Adams $50,000 and Taylor $12,700. Under the proposition of January 24, 1893, the same proportion of stock was to be maintained in coal or other companies organized to carry out the project. This proportion was maintained in the new organization, the stock of the Crown Coal & Tow Company being transferred to the stockholders of the railway company in

proportion to their several amounts of stock in the said railway company.

Bonds of the Belleville City Railway Company to the amount of $500,000 were turned over to Leathe, to be taken by him at par if appropriated by him, or if sold, to be upon terms agreed upon by the directors. The proceeds of these bonds was to be used in completing the road, in paying for property purchased for the road and the coal company, and in applying the debts of the railway company. Leathe then proceeded to finish the building of the road, completing it in 1894. In so doing and in what he had already expended of his own money, it is claimed that he has invested $292,143.18.

On March 1, 1894, at a meeting of the stockholders of the Crown Coal & Tow Company, the following resolution was passed :

" Resolved, that the president of this company deliver to each stockholder who has contributed either money or property to the capital stock of this company, bonds of this company at par, to the amount equal to said contribution, with interest from the date thereof to this date."

Under this resolution bonds of this company were distributed as follows :

| | |
|---|---:|
| Samuel H. Leathe | $118,500 |
| Bart S. Adams | 10,000 |
| John T. Taylor | 4,000 |
| Edward L. Thomas | 5,000 |

After this date the accounts of the two companies seem to have been kept separate.

On November 8, 1895, Elbert H. Gary purchased the properties of both the Belleville City Railway Company and the Crown Coal & Tow Company. He paid to Leathe $500,000, for which Leathe delivered to him the bonds of the railway company and 3,187 shares of its capital stock. Also the bonds of the coal company and 1,297 shares of its capital stock.

Charles W. Thomas, then holding the stock of his brother Edward L. Thomas (appellee) also transferred his stock to Gary, executing the following receipt :

" Received of Elbert H. Gary, as agent for certain principals, forty-four thousand one hundred thirty-one and fifty-seven one-hundredths (44,131.57) dollars in full payment for ten hundred twenty (1020) full paid shares of the capital stock of the St. Louis, Belleville and Southern Railway Company (formerly the Belleville City Railway Company) and also four hundred eight (408) full paid shares of the Crown Coal & Tow Company (formerly the Crown Coal Company) and in full payment of all claims against said companies or either of them, or their property or any part thereof.

And I do hereby sell, assign and transfer unto said Elbert H. Gary, as agent for certain principals, all and each of the said shares of stock, and direct that certificates of the same be duly issued to them.

And I hereby represent and warrant, that I have the full title to and the lawful right to transfer as above all of said stock.

(Signed) CHARLES W. THOMAS."

Accompanying this transfer was the following certificate of Leathe :

" Certificate for the above shares of capital stock belongs to Charles W. Thomas, and he has the right to transfer it.
(Signed) CHARLES W. LEATHE,
President both the above corporations.
$50,000
5,868.43 Leathe's judgment deducted.

---

$44,131,57.

" I, also, for the consideration aforesaid, assign to Elbert H. Gary, agent as aforesaid, one share of the capital stock of the St. Louis, Belleville and Southern Railway Company, and one share of the capital stock of the Crown Coal and Tow Company now standing in the name of Henry N. Needles, and agree to deliver the same.
Nov. 8, 1895. CHARLES W. THOMAS."

It appears that the $5,868.63 was deducted from the amount coming to Charles W. Thomas on account of the payment by Leathe of a debt owing by appellee, for which Leathe had agreed to deposit bonds as security.

On December 21, 1893, appellee, Thomas, recovered judgment against the Belleville & St. Louis Railway Company for $53,022.24. Appellant, Leathe, was notified to defend

the suit if he saw fit, upon the ground that he had agreed to pay the debts of the company. Appellant employed counsel and defended the suit. He also filed a bill in chancery to enjoin the prosecution of said suit. An answer to the bill was filed by appellee alleging in substance what he had charged in his said suit against the railway company. The suit at law and the suit in chancery for injunction were tried together, the bill of appellant dismissed, and judgment rendered for appellee in the suit at law for $53,022.23, as before stated.

Subsequently, the Belleville & St. Louis Railway Company for the use of appellee, brought suit against appellant in the Circuit Court of St. Clair County, to the April term, A. D. 1894, to recover $60,000, the amount claimed to be due said railway company for the use of appellee.

Appellant, by petition, transferred this suit to the United States Court for the Southern District of Illinois, where judgment was rendered for the defendant, Leathe. Appellee took the case by writ of error to the United States Circuit Court of Appeals, where evidence on motion was excluded and judgment affirmed.

GUSTAVUS A. KOERNER, attorney for appellant.

A judgment of a state court has the same credit, validity and effect in every other court within the United States which it had in the state where it was rendered, and whatever pleas would be good thereto in such state, and none others, can be pleaded in any other court within the United States. Mills v. Duryee, 7 Cranch, 481; Hampton v. McConnel, 3 Wheat. 234; Rae v. Hulbert, 17 Ill. 572; Lawrence v. Jarvis, 32 Ill. 304; Firemen's Ins. Co. v. Thompson, 155 Ill. 204; Am. & Eng. Ency. of Law (2d Ed.), Vol. 13, 1026, and cases cited.

The rule that a judgment of a sister state must be given the same effect as it has in the state where rendered is not affected by the fact that a similar judgment of a home tribunal would not have the same effect. Green v. VanBuskirk, 38 How. Pr. 52; S. C., 5 Wallace, 307.

In an action on a judgment rendered in a sister state, judicial notice will be taken of the law of that state so far as may be necessary to ascertain the faith and credit to be given to the judgment. Kopperl v. Nagy, 37 Ill. App. 23; Rae v. Hulbert, 17 Ill. 572.

The person sought to be charged in an action on a judgment of a sister state can not take advantage of any defenses which were, or might have been, made in the original action. Ferguson v. Mahon, 11 Ad. & El. 179; McMahon v. Eagle L. Ass'n, 169 Mass. 539; Hammond v. Place, 74 N. W. Rep. 1002; Dunstan v. Higgins, 138 N. Y. 70.

DILL & WILDERMAN, attorneys for appellee.

Set-off is a mode of defense whereby the defendant acknowledges the justice of the plaintiff's demand on the one hand, but on the other sets up a demand of his own to counterbalance it, either in whole or in part. 22 Am. & Eng. Ency. of Law, pp. 211, 212, 227; 7 Wait's Actions and Defenses, p. 473.

In the absence of statutory provisions requiring him to do so, a defendant, who has a demand against a plaintiff capable of being set off against the plaintiff's demand, may interpose it or not, as he may elect. Encyc. Pleading & Practice, Vol. 19, pp. 731–733; Quick v. Lemon, 105 Ill. 578; Morton v. Bailey, 1 Scam. 213; McDole v. McDole, 106 Ill. 459.

An action, so far as the remedy is concerned, is always governed by the law of the state where it is brought, even if the action is brought on a judgment of a state other than of the state in which the action on the judgment is brought. McElmoyle v. Cohen, 13 Pet. 312; Bacon v. Howard, 20 How. 22.

Set-off is in its nature a defense arising *ex post facto* and pertains to the remedy rather than to the cause of the plaintiff's action, which it admits; it is a mere regulation of procedure, and therefore subject to the laws of the state where the plaintiff brings his action and not to the laws of the state where the plaintiff's cause of action arose. Story on Conflict of Laws (8th Ed.), Sec. 575, 582a; Am. & Eng.

Ency. of Law, Vol. 22, pp. 238–239; Mineral Point R. R. Co. v. Barron, 83 Ill. 365; Davis v. Morton, 5 Bush (Ky.), 160 (96 Am. Dec. 345); Savary v. Savary, 3 Clark (Iowa), 271.

The full faith and credit which the Constitution of the United States requires shall be given in every state of the Union to the judgments of the other states consists in simply denying to persons against whom they were rendered, the right to plead or interpose as a defense, when they are sued on them in the courts of a state other than that in which they were rendered, any matter which was determined by it, or which involves a re-examination of the merits involved in the actions in which they were rendered, or which draws in question any fact or right or liability determined by them, or which seeks to impeach them for fraud; but such judgments under the constitutional provision differ from a foreign judgment in no other respect. Hanley v. Donoghue, 116 U. S. 1; Renaud v. Abbott, 116 U. S. 277.

A state may enact a statute prescribing one period of limitation for its own judgments and a shorter period for the judgments of the sister states, or it may prescribe a period of limitation for the judgments of the sister states and not enact any such or any other limitation as to its own judgments. Ambler v. Whipple, 139 Ill. 322; Bemis v. Stanley, 93 Ill. 230; McElmoyle v. Cohen, 13 Pet. 313; Metcalf v. Watertown, 153 U. S. 671.

Where the defendant pleads to an action on such a judgment, a set-off, and no other plea, as was done in this case, he thereby admits the validity of the judgment sued on; hence the faith and credit of the judgment sued on is in no way impeached or drawn in question. Folsom v. Winch, 63 Iowa, 477; Ansley v. Bank of Piedmont, 113 Ala. 467 (59 Am. St. Rep. 122); Gregory v. Trainor, 4 E. D. Smith (N. Y.), 58.

In actions on judgments of sister states, the court in which such action is brought will presume that the court which rendered such judgment had jurisdiction of the parties and the cause, and that the judgment is valid. Rae v.

Leathe v. Thomas.

Hulbert, 17 Ill. 572; Horton v. Critchfield, 18 Ill. 133; Hanley v. Donoghue, 116 U. S. 5; Knowles v. Gaslight Co., 19 Wall. 58; Settlemier v. Sullivan, 97 U. S. 444.

But while such presumptions prevail in favor of the validity of those judgments, neither the courts of this state nor the courts of the United States take judicial notice of the statutes of the state in which such judgments were rendered. Horton v. Critchfield, 18 Ill. 133; Hanley v. Donoghue, 116 U. S. 4–5; C. & A. R. R. Co. v. Wiggins Ferry Co., 119 U. S. 615.

The report of a referee has the weight of the verdict of a jury for which he is the substitute. Story v. DeArmond, 77 Ill. App. 74, 87; Butler v. Randall, 25 Ill. App. 586, 590; Butler v. Cornell, 148 Ill. 276.

Mr. Justice Worthington delivered the opinion of the court.

The record in this case is voluminous, covering over 1,300 pages, and is imperfectly abstracted. The statements submitted by counsel are doubtless clear to them, and to those familiar with the diversified transactions of the parties, but they are by no means readily comprehended by one depending upon an examination of the record as abstracted. The statement herewith presented gives the salient features of the case omitting many details not pertinent to the issues involved.

The material points made by appellant will be considered without reference to the order in which they are presented. It is insisted that the laws of Missouri do not authorize pleas of set-off in a suit upon a domestic judgment. And that, this being so, such pleas can not be entertained by the courts of Illinois, in a suit upon a judgment rendered in Missouri. This claim is based upon Sec. 1, Art. 4, of the Constitution of the United States, which provides that " full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state."

It is also claimed that the courts of one state will take

judicial notice of the laws of a sister state, so far as is necessary to.ascertain the faith and credit to be given to the judgments of such state when sued upon in another state, and that for this purpose the courts of Illinois will take judicial notice that the laws of Missouri do not provide that pleas of set-off may be interposed in suits upon judgments.

In support of this latter proposition, counsel cite Rea v. Hulbert, 17 Ill. 572. This case decides only that in a suit upon a judgment rendered in another state, the declaration need not aver that the court which rendered the judgment had jurisdiction. It holds that it will be presumed that such court had jurisdiction and that its proceedings were regular.

The validity of the judgment in the case at bar is not questioned. It is conclusive as to all defenses that were made, or might have been made, in contesting the cause of action sued upon. It is not necessary to take cognizance of any of the laws of Missouri in order to sustain the conclusiveness of the judgment. It is conclusive by virtue of the section of the Constitution of the United States, cited *supra*.

If appellant relied upon the statute of Missouri as a defense to the pleas of set-off, it should have been specially pleaded as a defense. Walker v. Maxwell, 1 Mass. 104; Holmes v. Broughton, 10 Wendell, 75; Sherrill v. Hopkins, 1 Cowen. 103.

The existence of such statute would then have been a fact to be proved, since the courts of one state do not take judicial cognizance of the laws of a sister state. Phillips on Evidence, Vol. 2, p. 427, and note on page 428 citing cases, and also many other cases to the same effect in note at bottom of page 413.

To the same effect is Mason v. Wash, Breese, 40; Bonnell v. Holt, 89 Ill. 77; Menard v. Hood, 68·Ill. 121.

In C. & A. R. R. Co. v. Wiggins Ferry Co., 119 U. S. 616, it is held:

"Whenever it becomes necessary under Art. 47, Sec. 1, of the Constitution of the United States, for a court of one

state, in order to give faith and credit to a public act of another state, to ascertain what effect it has in that state, the law of the other state must be proved as a fact."

It is further said :

" The courts of the United States when exercising original jurisdiction, take notice without proof, of the laws of the several states; but in this court, acting under appellate jurisdiction, whatever was matter of fact in the state court where judgment or decree is under review, is matter of fact here."

To the same effect is Hanley and another v. Donoghue, 116 U. S. 4–5. A note in Phillips on Evidence, 2d Vol., p. 191, cites from cases which state argumentatively that if the federal courts take cognizance of state laws, that state courts should also take notice of the laws of other states. But in this note it is said :

" We know of no decisions expressly settling that the court before which the judgment of a neighboring state is brought, may take judicial notice of the law under which it was rendered in ascertaining the local effects."

If the courts of this state do not take judicial notice of the laws of Missouri, it is clear that appellant's demurrer to the pleas of set-off could not be sustained, and this, too, without regard as to whether his contention that they could not be entertained under the law of Missouri is correct or not. This is for the obvious reason that the pleas of set-off to judgments are allowed by the law of this state, and there was nothing before the court to show that they were not allowed by the laws of Missouri.

A general demurrer lies to a plea which on its face does not present a defense to the action.

A special demurrer lies to a fatal defect in the plea, which, if called to the attention of the court, can be cured, but which if not pointed out, is not fatal to the plea. The defect in either instance must be such as can be seen by inspection of the plea when the law involved is within the judicial cognizance of the court. But if the defect in the plea requires proof of some fact not disclosed by the declaration, or arising by the application of the law judi-

cially taken notice 'of by the court, then the demurrer is properly overruled.

As counsel for appellant relies upon the statute of Missouri which he purports to cite, but which is not in evidence, to sustain his contention that the pleas of set-off are subject to demurrer, and as the Circuit Court did not have judicial notice of such statute, it follows that the demurrers, both general and special, to the pleas of set-off, were properly overruled.

It is also to be noted, that after appellant's demurrer was overruled he replied to the pleas, thus resting his case upon the issues of fact presented by the pleadings.

In C. & A. R. R. Co. v. Clausen, 173 Ill. 102, it is said:

"No error in overruling a demurrer could be assigned in this court (the supreme court) for the reason that after the demurrer was overruled, the defendant pleaded the general issue and thereby raised an issue of fact which was tried. It has always been the rule in this state, that if a party wishes to have the action of a court in overruling his demurrer reviewed in this court, he must abide by his demurrer."

And again:

"Defendant made a motion in arrest of judgment which was overruled, and that is assigned for error; but having once had the judgment of court on his demurrer, it could not again invoke it for the same reasons by moving in arrest. After a judgment overruling a demurrer to a declaration, there can be no motion in arrest of judgment on account of any exception to the declaration on the argument of the demurrer."

The second assignment of error is:

"The court erred in entertaining and adjudicating upon said pleas. It had no jurisdiction of the subject-matter of said pleas."

What has been said upon the previous assignment of error for overruling demurrer to pleas of set-off, applies also to this second assignment. It may be said in addition that "a plea of set-off is in the nature of a declaration in cross-action." * * *

Leathe v. Thomas.

" It is a counter-claim, as to which the defendant is plaintiff, and must establish his right as upon a distinct action." Harber Bros. Co. v. Moffat Cycle Co., 151 Ill. 99.

" It is tantamount to the institution of a cross-action by the defendant against the plaintiff in the same proceeding." Litch v. Clinch, 136 Ill. 424.

Being in the nature of a cross-action, it is governed by the same principles as would govern an original action for the same cause.

Treating these pleas of set-off as in the nature of declarations in a cross-action, there was no plea to the jurisdiction filed against them, nor was want of jurisdiction in any way suggested, except as the demurrers might be treated as raising the question.

It is not claimed that the statute of Missouri prohibits set-off from being pleaded in suits on judgments.

If there is no law that prevents a court from trying an issue of fact in cases where it has general jurisdiction, when both parties submit it for trial, although one party may not be authorized by law to compel such submission, it can not be said that the court does not have jurisdiction of the subject-matter.

When appellant brought suit in this state, he must be presumed to have known what the laws of the state were, and that they control the practice when a remedy is sought. That this is the law is well settled.

In treating of the statute of limitations as affecting foreign judgments, it is said in Ambler v. Whipple, 139 Ill. 324 :

"Under the rule thus announced, a judgment valid and conclusive in the state where rendered, will be enforced in the other states upon the same footing as domestic judgments within such period of limitations as may be prescribed in respect of such judgments by the law of the state where it is sought to be enforced."

Again citing Hanley v. Donoghue, 116 U. S. 4 :

"Judgments recovered in one state of the Union, when proved in the courts of another, differ from judgments recovered in a foreign country in no other respect than that of not being re-examined upon the merits, nor impeach-

able for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties."

In Bacon v. Howard, 20 Howard, 25, treating on limitations by states, it is said :

"There is no clause in the Constitution of the United States which restrains this right in each state to legislate upon the remedy in suits on judgments of other states exclusive of all interference with their merits."

To the same effect is McElmoyle v. Cohen, Adm'r, 13 Peters, 312.

Appellant chose his forum. By his demurrers he submitted the right of defendant to file pleas of set-off to the decision of the court. Not abiding by that decision, he voluntarily pleaded by replying to these pleas and submitting issues of fact to be decided. He can not now defend upon the ground that the court did not have jurisdiction to try the issues of fact raised by the pleadings.

The second assignment of error is not, therefore, sustained.

Appellant's fifth exceptions to the referee's report is as follows :

"The referee failed to find that the claim made, that Leathe absolutely promised to pay the debts of the Belleville & St. Louis Railway Company, had been adjudicated in favor of said Leathe and against said Thomas, as shown by the evidence."

While this exception is not pressed in argument, nor its overruling by the court specially assigned as error, it may be considered with the general assignment that the court erred in overruling exceptions to the report of the referee, and in rendering judgment for the amount found to be due by the referee. The alleged adjudication referred to, is the judgment of the United States Circuit Court of Appeals for the Southern District of Illinois. The history of this is as follows:

The Belleville & St. Louis Railway Company brought suit against appellant, Leathe, for the use of Edward L. Thomas, to the April term, 1894, of the Circuit Court of St. Clair County, for $60,000. The declaration consisted

Leathe v. Thomas.

of one count. A copy of the deed from said railway company to Leathe, of March 25, 1893, was filed as a copy of the instrument sued on. The allegations were " that one dollar and other valuable considerations " referred to the debts of the said railway company, and that Leathe, by the acceptance of the deed, promised to pay said debts, and that one of these debts was an indebtedness to Edward L. Thomas of $60,000.

Leathe removed the cause by petition to the United States Circuit Court of the Southern District of Illinois. In that court two additional counts were filed. One of these counted upon the judgment at law of the St. Clair County Circuit Court in favor of said Thomas and against said railway company of December 21, 1893, for $53,022.23, which suit said Leathe had been notified to defend, and had employed counsel and had defended. It is the judgment upon which the referee bases his finding of the amount due from the railroad company to appellee. The other count was based upon the dismissal of Leathe's bill in chancery to enjoin the prosecution at law of said suit.

These causes had been tried together in the Circuit Court of St. Clair County.

Upon the trial of the case in the United States Circuit Court, the first count of the declaration was dismissed and the case was heard by the court upon the two added counts. The record of the judgment at law and of the dismissal of the injunction suit was the only evidence introduced. On motion, this evidence was excluded and judgment rendered for defendant. The case was then taken by writ of error to the United States Circuit Court of Appeals, where judgment was affirmed.

The reason for the exclusion of the evidence of the judgment at law in the Circuit Court of St. Clair County is thus stated, in the opinion given by the court:

" It may be that, by reason of the facts alleged, the defendantt in error was estopped by the judgment at law to deny the amount of the indebtedness of the railway company to Thomas, but the question of his personal liability

to pay the debt was not an issue, and therefore could not have been concluded by the judgment."

As to the record in the chancery cause, the court says:

" The proposition on which chief reliance is placed by the plaintiff in error is that the liability of the defendant in error to pay the debt was determined by the decree in the chancery suit. Together with various other matters of defense set up in answer to the bill in that case, the promise of defendant in error on sufficient consideration to pay the debts of the railway company, including that due to Thomas, was definitely averred, and the bill having been dismissed after a hearing upon the merits, it is insisted that the decree of dismissal is an adjudication between the parties of all the issues, and therefore a conclusive determination of the alleged liability of the defendant in error. The proposition is not sound, and it is believed to be without support in the decided cases. It is, of course, true that a decree in absolute terms dismissing a bill, is an adjudication of the merits of the controversy; but that does not mean that such a decree must be regarded as establishing conclusively the truth of all matters of defense alleged where more than one defense had been pleaded."

The court accordingly held that neither the record of the judgment at law in the Circuit Court of St. Clair County, in favor of appellee, nor the record of the dismissal of appellant's bill to enjoin the prosecution of the law case, sustained plaintiff in error's declaration, and therefore affirmed the judgment of the lower court.

It is clear from this reference to the finding of the United States Court, that there was no adjudication in that court upon the issue as to whether Leathe promised to pay the debts of the Belleville & St. Louis Railway Company, as a consideration for the property conveyed by said deed. There is nothing in the opinion or judgment of the United States Court that decides any question now litigated. There was no error, then, in overruling the exception to the referee's report, because it failed to find that the claim made, that Leathe absolutely promised to pay the debts of the Belleville & St. Louis Railway Company, had been adjudicated in favor of Leathe.

The only expression in the opinion of the court bearing

upon any question now for consideration, is the sentence, "It may be that by reason of the facts alleged, the defendant in error is estopped by the judgment at law to deny the amount of the indebtedness of the railway company to Thomas."

This intimation, of course, decides nothing. But we think that it does correctly intimate that the law is upon the question of estoppel, as applied to the finding of the amount due Thomas from the railway company.

It is in evidence that at a meeting of the board of directors of the Belleville & St. Louis Railway Company September 8, 1893, the following resolution was passed:

"Resolved, that the secretary of this company notify Samuel H. Leathe of the bringing of said suit (the suit of appellee against the company of December 21, 1893, in which he recovered judgment for $53,022.23), and inform him that the company will permit him to defend the same in his own name if he desires so to do."

On the next day, notice of this resolution was given to Leathe by the secretary. Leathe employed counsel and alone defended the suit.

The judgment obtained is of no importance in this case, unless the evidence shows that appellant promised to pay the indebtedness of the Belleville & St. Louis Railway Company. If that promise is established, appellant is in no position to deny what the amount of the indebtedness of the company was to Thomas when the judgment was obtained, for the reason that this was the issue then decided in a proceeding in which the company did not defend and appellant did defend, denying that there was any indebtedness. Black on Judgments, Sec. 540; People v. Rickert, 159 Ill. 499.

The important issue of fact in this case is, what was understood by "other valuable considerations" in the deed from the Belleville & St. Louis Railway Company to appellant, and whether, as a part of said consideration, appellant agreed to pay the debts of said company. Appellant insists that the contract of January 24, 1893, controls. That contract provides that "said Thomas and Adams are

to receive the amounts as per statement rendered (Thomas' letter to Leathe) and said Leathe to receive the amount to be advanced by him, and balance to go into the treasury of the railway company. First proceeds of bonds to be applied to payment of amounts advanced by Leathe until satisfied."

Appellee insists that the agreement of March 25, 1893, controls, and that by it Leathe promised without any qualification to pay the debts of the company.

Appellee contends that because appellant did not sign the January contract until some time after March, 1893, and did not comply with some minor provisions contained in it, that said contract was never executed.

It is also in evidence that the contract of January 24th was not signed by Leathe until some time in June or July, 1893, and that when signed Leathe suggested to Chipley that "it would be well enough to forget the date we signed it."

It is also in evidence that he declared that he would not proceed with the enterprise unless the charter of the Belleville City Railway Company was substituted for the charter of the Belleville & St. Louis Railway Company.

We think, however, that this contention of appellee is not sustained when all the evidence is considered together.

The instrument of January 24th became accepted by Leathe without Leathe's signature, when, with the acquiescence of those signing it, he received the stock and bonds specified in it, and entered upon the building of the road. That he did this is not denied.

But if the enterprise was undertaken by Leathe under the conditions of the instrument of January 24th, it does not follow that its terms were not afterward modified. Under the terms of that instrument, Leathe was first to receive the amount that he should invest. Then Thomas and Adams were to receive the amounts which they had invested. Under the agreement of March 25th, as claimed by appellee, Leathe agreed to pay the debts of the Belleville & St. Louis Railway Company (which would include

Leathe v. Thomas.

the amount the company owed appellee), without any quali-
fication.

This difference presents an issue of fact which must be
determined from the evidence of witnesses bearing directly
upon the issue considered in connection with attendant cir-
cumstances that are disclosed by the testimony. In pass-
ing upon this issue of fact, the finding of the referee
who was appointed by the court with the consent of both
parties, and who saw and heard the witnesses, is entitled
to the same consideration as the verdict of a jury. Butler
v. Cornell, 148 Ill. 276; Butler v. Randall, 25 Ill. App. 586;
Story v. De Armond, 77 Ill. App. 74.

The referee found that a part of the consideration of the
deed of March 25th, of the Belleville & St. Louis Railway
Company to appellant, was that appellant should pay the
debts of the railway company.

Charles W. Thomas, the brother of appellee, testifies
in substance, that in the early part of 1893 he had a con-
versation with Leathe in his office in St. Louis in the pres-
ence of Chipley, Bart Adams, John T. Taylor and appel-
lee, in reference to the Belleville City Railway charter;
that Leathe said he would not build the road until that
charter was procured; that plans and negotiations were
had with reference to it, resulting in the agreement of
March 25th; that at Leathe's request, he drew the deed of
the Belleville & St. Louis Railway Company to him, which
Leathe, four or five days before March 25th, took with him
to consider and to submit to his lawyer; that the consid-
eration of that deed, while not expressed, was the payment
by Leathe of all the debts of the Belleville & St. Louis
Railway Company; that this was perfectly understood and
frequently talked over, and was one of the plans suggested
in order to make the payment of Leathe's stock full and
complete in the Belleville City Railway Company. The
consideration of the payments of the debts of the Belle-
ville & St. Louis Railway Company was not put in the
deed at Leathe's request, because, he said, investors looking
after the bonds of the Belleville City Railway Company

might become frightened at the debts of the Belleville &
St. Louis Railway Company, over whose land the Belle-
ville City Railway Company was going to build its roads,
and he wanted it left out.

Alpheus Boling testified that he was a stockholder and
director in the Belleville & St. Louis Railway Company;
that he was present at the meeting in Charles Thomas'
office March 25th. " I understood that Leathe had bought
the road from Edward L. Thomas and was to pay all the
indebtedness of the road."

Henry M. Needles testified that he was present at the
meeting of March 25th, at Thomas' office, the most of the
time; that he had heard Charles W. Thomas' testimony,
and " my recollection is substantially as his."

At the time of the hearing before the referee, Chipley
was seriously ill, of which illness he subsequently died,
and could not be used as a witness. Appellant introduced
his testimony given in a trial in which the parties in this
record were parties, where he was called as a witness by
appellee. Chipley testified as to the negotiations which led
to making the contract of January 24th; that it was not
signed by Leathe until about June or July 27th; that
Leathe then suggested to witness that " it would be well
enough for us to forget the date of signing." 1 do not
remember the exact date we first heard of the Belleville
City Railway charter. It was decided by Leathe and my-
self that this charter was the one we wanted to act under.
Leathe said he would not go ahead under the original prop-
osition of January 24th. There were conversations held by
Leathe, Charles W. Thomas and myself, into which details
were gone into pretty thoroughly as to what was to be
done under the Belleville City Railway charter. Charles
W. Thomas said the buying of the Belleville & St. Louis
Railway Company property and issue of it to the Belleville
City Railway Company would pay up the stock of the
company.

" Q. Now, Mr. Chipley, at the time of the making of the
contract and the negotiations leading to the contract, for

whom were you acting? A. I was acting for L. M. Chipley and Samuel H. Leathe.

Q. Now, Mr. Chipley, you remember the meeting of March 25th, at the office of Charles W. Thomas? A. Yes, sir.

Q. You know that there was a deed made on that day from the Belleville & St. Louis Railway Company to Mr. Leathe? A. Yes, sir.

Q. What for? A. To enable him to turn it over to the Belleville City Railway Company and pay up the stock of the company with it.

Q. What was he to pay for that to the Belleville & St. Louis Railway Company, if anything? A. He was to pay all outstanding debts of the company.

Q. Of what company? A. The Belleville & St. Louis Railway Company; and he was to assign the stock to the parties as agreed upon at the time.

Q. Now, after Mr. Leathe got the property from the Belleville & St. Louis Railway Company what did he do with it? A. He deeded it to the Belleville City Railway Company.

Q. Under the agreement spoken of? A. Yes, sir.

Q. Now, had the agreement that was consummated by the action of the parties on the 25th of March been talked about before that? A. Yes, sir. In my office, by Mr. Leathe, Mr. Charles W. Thomas, yourself, Bart S. Adams, Taylor and myself. Needles, I believe, was interested but not present.

Q. Well, was it or was it not practically agreed on to do these things that were done on the 25th of March before the 25th of March? A. Yes, sir.

Q. Now, then, this contract of January 24th, was it or was it not ever in force between the parties? A. That is the original; no, sir. That never was in force.

Q. Under what contract was Mr. Leathe going to build the road; that you know? A. Under the contract with the Belleville City Railway, entered into on the 25th of March.

Q. Do you know that from him? A. Yes, sir; and from myself being present and being one of the parties to the transaction."

On cross-examination he testified as follows:

"Q. The proposition was, as I understand you to say, originally, that Mr. Leathe should put up the money to

complete this road and get fifty-one per cent of the stock of the road and pay himself out of the bonds thereon, and the balance was to pay the debts of the other parties, if there was enough left.  A.  Yes, sir.

Q.  That was it?  A.  Yes, sir.

Q.  Now, do I understand you to say that Mr. Leathe, knowingly, ever agreed to anything else than that?  A. Well, that I could not tell you anything about.  What Mr. Leathe might have agreed to I do not know.

Q.  Was the understanding ever changed that he was to be paid first out of the proceeds of the bonds, and then the others?  A.  No, sir.  Mr. Leathe was to be paid first.  I had that inserted and suggested it myself, that Mr. Leathe was to receive his money back first.  I was acting for Mr. Leathe in that matter, and made that suggestion.

Q.  That understanding was never changed in anything that occurred, to your knowledge?  A.  Not to my knowledge; no, sir."

Appellee Thomas testified:

"Leathe told me that he had not signed the contract (of January 24th); that he would not go into the enterprise if I did not purchase the Belleville City Railway charter. We had a number of meetings at Chipley's office where propositions and details were discussed, and an agreement was finally reached.  Witness states what was done at office of Charles W. Thomas on March 25th, and that it was then agreed by Leathe, the same day that the deed of the Belleville & St. Louis Railway Company was made to him, that he would pay the debts of said company as shown to him prior thereto, referring, as we understand his testimony, to the statement contained in appellee's letter to appellant before January 24, 1893."

Appellant Leathe testified, positively, denying that a part of the consideration for the deed of the Belleville & St. Louis Railway Company was, that he should pay the debts of the company, or that he promised to pay said debts, and denying that he refused to continue under the contract of January 24th, stating that it was Chipley who insisted on the Belleville City Railway charter, and that he, Leathe, did not consider it of much value.

Samuel Leathe, son of appellant, testified that he was present most of the time at the meeting of March 25th,

and never heard that my father was to pay the debts of the company. Am positive I would have heard and known of it if it had occurred.

John M. Holmes, an attorney who represented the Adams estate, testified:

" I understood that Chipley was acting for Charles W. Thomas in getting the charter of the Belleville City Railway Company; that he attended the meeting of March 25th in the interest of the Adams estate; that Leathe on the way over asked witness to look after his interest; that no agreement was made at that meeting that Leathe would pay the debts of the Belleville & St. Louis Railway Company; if there had been, my interest in the matter would ·have terminated then and there, and I would have acted upon it very promptly. Chipley was insisting on the contract of January 24th being in force as late as October, 1893, and I told Mr. Thomas, and at that time no question was made that the company was acting under any other contract than this one."

Counsel for appellee insists that the claim of appellee that appellant promised absolutely to pay the debts of the railway company as a part of the consideration of its deed to him, is so unreasonable as to make the evidence of witnesses for appellant preponderate upon this issue of fact.

Whether a contract is reasonable or unreasonable, if induced without fraud and knowingly entered into, is not a factor for consideration when its enforcement is sought at law. The evidence tends to show that negotiations were had for several days before the transactions of the 25th of March were consummated. Appellant is shown to be a man of affairs, having a will of his own, and likely to understand what contracts he made. This court can not, from the evidence before it, fully understand and appreciate all the motives and anticipations of profits that may have influenced the parties in the re-organization of the companies and the agreements entered into on March 25th. It is clear that appellee parted with $25,000 of his stock as a condition precedent imposed by some party or parties before such re-organization could be effected.

Appellant knew from the letter of Thomas containing a

statement of what the Belleville & St. Louis Railway Company owed appellee and the Adams estate, and by the contract of January 24th, that he was to pay this indebtedness, after first deducting what amount he might invest. If it appeared to him, that, by owning a majority of paid-up stock in both the Belleville City Railway Company, operated under a liberal charter, and a majority of the stock of the Crown Coal & Tow Company, and holding $500,000 of the bonds of the railway company to dispose of as he saw fit, increased profits would accrue to him to such an extent as to make it an object to secure the re-organization of March 25th, it is not for us to measure what profit he may have anticipated.

It is fair to assume that with counsel present to advise him, and having had the matter under consideration for days before March 25th, he believed that it was to his advantage to enter into the agreements that were then made. If the venture proved profitable, it would repay not only his own investment, but also the investments of appellee and of the Adams estate. To this extent he was already liable. The only risk taken was the risk of the enterprise not proving profitable. Appellant may have considered, and doubtless did consider, that under the re-organization and with the entire business practically under his own control, and with ample means to carry it on, that there was no risk involved.

The argument of counsel, that the claim of appellee that appellant did agree to pay the indebtedness of the railway company is so unreasonable that witnesses for appellee testifying to such an agreement can not be believed, when viewed under all the conditions of the re-organization of the companies, does not forcibly appeal to our judgment.

Giving to the report of the referee, who heard the witnesses testify, the weight given to the verdict of a jury, and considering their evidence in connection with all the attendant circumstances, we can not say that the court erred in overruling the exception under consideration.

It is urged that the referee, if correct in his finding upon

the issue of fact as to the appellant's promise to pay the debts of the company, erred in not crediting appellant with the amount received by Charles W. Thomas from the sale of the stock of appellee held by him.

We see no error in not allowing this credit. The debts of the company were charges upon its entire stock. When its bonds were sold, the proceeds of the sale would apply upon the payment of its debts.

To charge a part of its debts upon the stock of one stockholder, instead of upon the stock of all, would be inequitable and unlawful.

This is true, if, as appellant contends, the enterprise was carried on under the contract of January 24th, the only change being the substitution of the one charter for the other. If not carried on under such contract, but under an entire change, and as a part of that change appellant agreed to pay the debts of the former company, then there is no reason why he should be relieved from his agreement, because something was received by appellee from the sale of stock acquired under the new agreement.

It is urged finally that the judgment is in excess of the *ad damnum* in the fourth plea.

It is sufficient to say to this objection that it was not made to the trial court, and is now for the first time urged. Such an objection is waived if not made before the court rendering judgment. Tomlinson v. Earnshaw, 112 Ill. 311; Utter v. Faffray, 15 Ill. App. 236; Hunt v. O'Brien, 59 Ill. 321; Fidelity & Casualty Co. v. Weise, 80 Ill. App. 499.

It may be said in addition that the *ad damnum* in the fourth plea, of set-off, that being the plea on which the referee found for appellee, and upon which judgment was rendered, was $65,000. On this plea the referee found that appellant owed to appellee the amount of the judgment of December 21, 1893, for $53,022.23. Upon this interest was allowed in the sum of $21,356.17. The first plea of set-off counts upon interest with other claims with an *ad damnum* of $65,000. The total *ad damnum* on the

two pleas was then $130,000, while judgment was rendered for $71,326.37.

Finding no reversible error in the record, the judgment of the Circuit Court is affirmed.